# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHRISTOPHER SEAN VAN WINKLE and DAVID ALLEN COX, | ) | |
| *Plaintiffs,* | ) | Judge Baskir |
| *v.* | ) | No. 07-652C |
| THE UNITED STATES, | ) | |
| *Defendant.* | ) | |

## ANSWER TO COMPLAINT

Defendant, the United States, hereby answers the allegations which appear in the numbered paragraphs of plaintiff's Complaint, filed September 6, 2007. Each numbered paragraph below responds to the corresponding numbered paragraph of the Complaint. Upon current information and belief, all averments of fact in the Complaint are denied except to the extent expressly admitted below.

1. With respect to paragraph 1, defendant admits that the plaintiffs have filed a Complaint against the United States of America. The remainder of paragraph 1 is a legal conclusion for which no response is required. To the extent that paragraph 1 is deemed to contain additional averments of fact, the same are denied.

2. With respect to paragraph 2, defendant admits that plaintiff, Christopher Van Winkle, is a resident of the State of North Carolina, is a Captain in the U.S. Army, and is currently on active duty in Afghanistan.

3. With respect to paragraph 3, defendant admits that plaintiff, David Alan Cox, is a resident of the State of Maryland, is a Captain in the U.S. Army, and is currently on active duty at Walter Reed Army Medical Center in Washington, D.C.

4. Paragraph 4 is a legal conclusion for which no response is required. To the extent that paragraph 4 is deemed to contain averments of fact, the same are denied.

5. With respect to paragraph 5, defendant admits that the U.S. Army is a part of the Government of the United States of America and that the United States of America is the named defendant. To the extent that paragraph 5 is deemed to contain additional averments of fact, the same are denied.

6. Paragraph 6 is a legal conclusion for which no response is required. Defendant admits that 28 U.S.C. § 1498 provides jurisdiction over claims for unauthorized use or manufacture of a patented article by or

for the Government. To the extent that paragraph 6 is deemed to contain averments of fact, the same are denied.

7. With respect to paragraph 7, defendant states the following: The first sentence is a legal conclusion for which no response is required. Regarding the second sentence, defendant admits that on July 18, 2006, U.S. Patent Number 7,076,806 ("the '806 patent") issued to Christopher Sean Van Winkle and David Alan Cox. Regarding the second sentence, defendant admits that U.S. Patent Application Number 11/027,281 was filed on December 30, 2004. Regarding the third sentence, defendant admits that a copy of the '806 patent was attached to the Complaint. The fourth sentence is a legal conclusion for which no response is required. To the extent that the fourth sentence is deemed to contain averments of fact, defendant is without knowledge or information sufficient to form a belief as them, and therefore denies the same. To the extent that paragraph 7 is deemed to contain additional averments of fact, the same are denied.

8. With respect to paragraph 8, defendant states the following: Regarding the first sentence, defendant admits that on September 9, 2005, the U.S. Patent and Trademark Office granted Applicant's May 12, 2005 petition to make U.S. Patent Application Number 11/027,281 special under

the provisions of 37 C.F.R. § 1.102(d) as an invention for countering terrorism. Defendant denies the averments contained in the second sentence. Regarding the second sentence, defendant admits that at column 1, lines 61-64 of the ’806 patent reads “[i]n accordance with a preferred embodiment of this invention, a removable body armor accessory adds protection of the areas that conventional body armor leaves substantially unprotected.” Defendant denies the averments contained in the third sentence. Regarding the third sentence, defendant admits that claim 1 of the ’806 patent reads “an axillary panel having a underarm coverage area,” and that “the panel is . . . made of ballistic material that impedes the penetration of at least one foreign object.” Defendant denies the averments contained in the fourth sentence. Regarding the fourth sentence, defendant admits that claim 5 of the ’806 patent reads “a deltoid panel having a coverage area . . . whereby the deltoid coverage area provides greater protection to an [sic] deltoid area of a wearer than that provided by the vest without the deltoid panel.”

Regarding the second and third sentences, defendant further admits the following: During Operation Iraqi Freedom combat operations, an increased threat has been encountered because of the extensive use of

Improvised Explosive Devices by terrorist insurgents. Combat commanders and medical personnel identified that Improvised Explosive Device spall and fragmentation entering the chest cavity through the exposed Deltoid (upper arm) region and the Axillary (under arm) region have resulted in numerous casualties and fatalities even though the Outer Tactical Vest of the Interceptor Body Armor used by U.S. Army soldiers provides torso protection from the fragmentary effects of Improvised Explosive Devices. The Deltoid and Axillary Protector was developed to meet this threat and provide an increased level of protection. The Deltoid and Axillary Protector consists of two ambidextrous modular components, the Deltoid Protector and the Axillary Protector. The Deltoid Protector attaches at the shoulder of the Outer Tactical Vest and is secured around the wearer's arm with a strap. The Axillary Protector is worn under the strap on the lower side of the Outer Tactical Protector. The Deltoid and Axillary Protector are issued in sets containing two (2) each of the Deltoid Protectors and the Axillary Protectors.

To the extent that paragraph 8 is deemed to contain additional averments of fact, the same are denied.

9. With respect to paragraph 9, defendant admits that plaintiffs served as physician assistants assigned to the 82nd Army Airborne Division stationed in Iraq. Defendant admits that on the Inventions Rights Questionnaire (DA Form 2871-R) dated August 6, 2004, Major Michel-Alexis Courtines represented that as physician assistants, plaintiffs' duties were to treat all sick, wounded, or injured U.S. and coalition soldiers as well as any captured enemy and wounded civilians.

Defendant further admits that plaintiffs have represented that the job descriptions from their Officer Evaluation Reports for the time period that the DAP device was invented are identical and state: Physician Assistant in the Medical Company of an Airborne Forward Support Battalion with an 18 hour, no notice, world-wide deployment mission. Serves as special staff officer to the battalion commander advising on potential medical threats and unit readiness. As Senior Brigade PA, advises the brigade surgeon on utilization and training of all the brigade's physician assistants. Responsible for primary and emergency medical care for approximately 4,500 soldiers of the task force. Responsible for training unit medics in combat casualty assessment, treatment and evacuation. Serves as OIC for medical coverage of airborne operations. Provides daily garrison

medical support including trauma, emergency, acute, gynecological, pediatric, and orthopedic care. Provides medical support in Pre-deployment (Soldier Readiness Processing) and Post-deployment activities.

10. With respect to paragraph 10, defendant states the following: Regarding the first sentence, defendant admits that plaintiffs have represented that they observed that many of the soldiers experienced serious injuries despite wearing conventional body armor. Regarding the second sentence, defendant admits that combat commanders and medical personnel identified that Improvised Explosive Device spall and fragmentation entering the chest cavity through the exposed Deltoid region and the Axillary region have resulted in numerous casualties and fatalities even though the Outer Tactical Vest of the Interceptor Body Armor used by U.S. Army soldiers provides torso protection from the fragmentary effects of Improvised Explosive Devices.

11. With respect to paragraph 11, defendant admits only that the Under Secretary for Technology, in his opinion dated March 20, 2007, found that a cardboard model of the plaintiffs' Deltoid and Axillary Protector design "was not made during work hours or with a contribution by the

Government of facilities, equipment, materials, funds for information, or time or services of other Government employees on official duty." On information and belief, defendants admit that U.S. Army personnel had been adapting the Groin Protectors which are part of the Interceptor Body Armor used by U.S. Army soldiers to fit under the arm and/or across the upper arm and shoulder area of individuals riding in vehicles to protect their deltoid and/or axillary areas from fragmentary injuries caused by Improvised Explosive Devices. To the extent that paragraph 11 is deemed to contain additional averments of fact, the same are denied.

12. With respect to paragraph 12, defendant admits only that the Under Secretary for Technology, in his opinion dated March 20, 2007, found that the cardboard model of the plaintiffs' Deltoid and Axillary Protector design was "not only indicative of a conception but . . . also was a reduction to practice." Defendant admits that the Under Secretary for Technology, in his opinion dated March 20, 2007, found that the cardboard model of the plaintiffs' Deltoid and Axillary Protector design "was not made during work hours or with a contribution by the Government of facilities, equipment, materials, funds for information, or time or services of other

Government employees on official duty." To the extent that paragraph 12 is deemed to contain additional averments of fact, the same are denied.

13. With respect to paragraph 13, defendant admits that by August 12, 2004, plaintiffs had disclosed to the U.S. Army a Deltoid Axillary Protective device in an Invention Rights Questionnaire (DA Form 2871-R). Defendants admit that plaintiffs have represented that on or about January 31, 2004 plaintiffs had disclosed to the U.S. Army a Deltoid Axillary Protection device in an undated and unwitnessed Invention Disclosure Form (DA Form 4734-R). Defendants admit that plaintiffs have represented that on or about January 31, 2004, plaintiffs had disclosed to the U.S. Army a Deltoid Axillary Protection device in an Invention Rights Questionnaire (DA Form 2871-R), which plaintiffs have represented was submitted at the same time as the Invention Disclosure Form (DA Form 4734-R) and which plaintiffs have represented was lost by the U.S. Army. Defendant lacks sufficient knowledge and information to be able to form an opinion as to whether it received the Invention Rights Questionnaire (DA Form 2871-R) or the Invention Disclosure Form (DA Form 4734-R) on or about January 31, 2004. To the extent that paragraph 13 is deemed to contain additional averments of fact, the same are denied.

14. With respect to paragraph 14, on information and belief, defendant denies the allegations herein.

15. With respect to paragraph 15, on information and belief, defendant admits that in late 2003 or early 2004 the U.S. Army made the decision to provide Deltoid and Axillary Protectors to every soldier in Iraq. To the extent that paragraph 15 is deemed to contain additional averments of fact, the same are denied.

16. With respect to paragraph 16, defendant states the following. Regarding the first sentence, defendant admits that on June 7, 2004, the U.S. Army issued Contract Number W91CRB-04-D-0014 to Point Blank Body Armor, Inc. to provide Deltoid and Axillary Protectors to the U.S. Army. Regarding the second sentence, defendant admits that the contract was for thirty-six months and specified a not-to-exceed maximum of 840,000 units. Regarding the second sentence, defendant admits that the price per unit was $285, leading to a not-to-exceed maximum amount of $239,400,000 for the contract. Defendant further admits that the ’0014 contract was modified on February 17, 2006 to reduce the not-to-exceed maximum by 142,152 units to 697,848 units. Defendant further admits that the ’0014 contract was modified on February 17, 2006 also to increase the

price per unit $0.81 to a price per unit of $285.81, leading to a not-to-exceed maximum amount of $199,451,936.88 for the contract. To the extent that paragraph 16 is deemed to contain additional averments of fact, the same are denied.

17. With respect to paragraph 17, on information and belief, defendant admits that Point Blank Body Armor Inc. is a subsidiary of Point Blank Solutions, Inc. which is a corporation existing under the laws of Delaware with a principle place of business at 2102 SW 2nd Street, Pompano Beach, FL 33069. On information and belief, defendant admits that Point Blank Body Armor, Inc. is a manufacturer of body armor with manufacturing facilities in the United States.

18. With respect to paragraph 18, defendant denies that the U.S. Army provided plaintiff's Deltoid and Axillary Protector design to Point Blank Body Armor, Inc. for manufacture. Defendant admits that it did not seek a license from plaintiffs. To the extent that paragraph 18 is deemed to contain additional averments of fact, the same are denied.

19. With respect to paragraph 19, defendant is without knowledge or information sufficient to form a belief as to whether Point Blank Body Armor, Inc. is currently manufacturing, offering for sale, and selling

products embodying the plaintiff's Deltoid and Axillary Protector design, and therefore denies the same.

20. With respect to paragraph 20, defendant states the following. Regarding the first sentence, the statements contained therein are conclusions of law for which no response is required. Regarding the second sentence, defendant admits that plaintiffs filed U.S. Patent Application Number 11/027,281 on December 30, 1994. Regarding the third and fourth sentences, defendant admits that the Under Secretary of Commerce for Technology in his opinion dated March 20, 2007, determined that "[a] cardboard model [of the plaintiffs' Deltoid and Axillary Protector design] was not only indicative of a conception but it also was a reduction to practice," and that "the invention was not made during work hours or with a contribution by the Government of facilities, equipment, materials, funds or information, or time or services of other Government employees on official duty, and that the invention does not bear a direct relation to and was not made in consequence of the official duties of the inventors." To the extent that paragraph 20 is deemed to contain additional averments of fact, the same are denied.

21. With respect to paragraph 21, on information and belief, defendant admits that plaintiffs sent a letter addressed to Point Blank Body Armor, Inc. dated July 18, 2007. To the extent that paragraph 21 is deemed to contain additional averments of fact, the same are denied.

22. With respect to paragraph 22, on information and belief, defendant admits that on August 3, 2007, Point Blank Body Armor, Inc. responded to plaintiffs' July 18, 2007 letter. To the extent that paragraph 22 is deemed to contain additional averments of fact, the same are denied.

23. With respect to paragraph 23, defendant admits that on June 7, 2004, the U.S. Army issued Contract Number W91CRB-04-D-0014 to Point Blank Body Armor, Inc. to provide Deltoid and Axillary Protectors to the U.S. Army, and that authorization and consent exists for items delivered to, and accepted by, the U.S. Army. To the extent that paragraph 23 is deemed to contain additional averments of fact, the same are denied.

24. With respect to paragraph 24, defendant admits that plaintiffs have represented that they have been and are now willing to grant licenses to qualified parties, including defendant, for the use of the device covered by the '806 patent at a reasonable royalty rate. To the extent that

paragraph 24 is deemed to contain additional averments of fact, the same are denied.

25. With respect to paragraph 25, defendant admits that on June 7, 2004 the U.S. Army issued Contract Number W91CRB-04-D-0014 to Point Blank Body Armor, Inc. to provide Deltoid and Axillary Protectors to the U.S. Army. Defendant admits that the contract was for thirty-six months and specified a not-to-exceed maximum of 840,000 units. Defendant admits that the price per unit was $285, leading to a not-to-exceed maximum amount of $239,400,000 for the contract. Defendant further admits that the ’0014 contract was modified on February 17, 2006 to reduce the not-to-exceed maximum by 142,152 units to 697,848 units. Defendant further admits that the ’0014 contract was also modified on February 17, 2006 to increase the price per unit $0.81 to a price per unit of $285.81, leading to a not-to-exceed maximum amount of $199,451,936.88 for the contract. Defendant denies that it has infringed or is infringing any valid claim of the ’806 patent. Defendant denies that plaintiffs have been damaged by defendant’s alleged infringement of the ’806 patent. To the extent that paragraph 25 is deemed to contain additional averments of fact, the same are denied.

26. With respect to paragraph 26, defendant refers to its answers to paragraphs 1 through 25 above.

27. With respect to paragraph 27, defendant admits that on June 7, 2004, the U.S. Army issued Contract Number W91CRB-04-D-0014 to Point Blank Body Armor, Inc. to provide Deltoid and Axillary Protectors to the U.S. Army. To the extent that paragraph 27 is deemed to contain additional averments of fact, the same are denied.

28. With respect to paragraph 28, defendant states the following. Regarding the first sentence, defendant admits that on July 18, 2006, the ’806 patent issued to Christopher Sean Van Winkle and David Alan Cox. The remainder of the first sentence is a legal conclusion for which no response is required. The second sentence is a legal conclusion for which no response is required. To the extent that the second sentence is deemed to contain averments of fact, defendant is without knowledge or information sufficient to form a belief as to them, and therefore denies the same. The third sentence is a legal conclusion for which no response is required. Regarding the third sentence, the defendant admits that claims 1 through 8 are directed toward “[a] body armor accessory,” and that claims 9 through 13 are directed toward “body armor.” To the extent that

paragraph 28 is deemed to contain additional averments of fact, the same are denied.

29. With respect to paragraph 29, defendant denies that the Deltoid and Axillary Protectors provided by Point Blank Body Armor, Inc. are described in and covered by any valid claim of the ’806 patent. Defendant denies that the Deltoid and Axillary Protectors provided by Point Blank Body Armor, Inc. infringe any valid claim of the ’806 patent.

30. With respect to paragraph 30, defendant admits that on June 7, 2004, the U.S. Army issued Contract Number W91CRB-04-D-0014 to Point Blank Body Armor, Inc. to provide Deltoid and Axillary Protectors to the U.S. Army, and that authorization and consent exists for items delivered to, and accepted by, the U.S. Army. The remainder of paragraph 30 is a legal conclusion for which no response is required. To the extent that paragraph 30 is deemed to contain additional averments of fact, the same are denied.

31. With respect to paragraph 31, defendant is without knowledge or information sufficient to form a belief as to the averments contained therein, and therefore denies the same.

32. With respect to paragraph 32, defendant admits that the plaintiffs’ claim is not based on the use or manufacture by or for the United

States of any article owned, leased, used by, or in possession of the United States prior to July 1, 1918.

33. With respect to paragraph 33, defendant denies that it has used Deltoid and Axillary Protectors described in and covered by the claims of the ’806 patent. Defendant denies that plaintiffs have been injured by defendant’s alleged use of Deltoid and Axillary Protectors allegedly described in and allegedly covered by the claims of the ’806 patent. The remainder of paragraph 33 is a legal conclusion for which no response is required. To the extent that paragraph 33 is deemed to contain additional averments of fact, the same are denied.

Regarding Plaintiffs’ Prayer for Relief

To the extent that plaintiffs’ prayer for relief contains any factual averments, defendant denies each. Defendant denies that it has infringed any valid, asserted claim of the ’806 patent, and denies that plaintiffs are entitled to any compensation or any of its other prayers for relief.

Defendant’s Further Answer as to Defenses

34. Answering further, defendant alleges, upon current information and belief, that it has not infringed any valid, asserted claim of the ’806 patent.

35. Answering further, upon information and belief, the ’806 patent is invalid pursuant to 35 U.S.C. § 102 (anticipation), § 103 (obviousness), and/or § 112.

36. Answering further, upon information and belief, plaintiffs have no right of action against the Government because they were in a position to induce or influence use of the invention by the Government.

37. Answering further, defendant asserts any and all defenses which are presently unknown to defendant by which, when ascertained, defendant prays leave to add to this Answer or otherwise give notice to plaintiff.

Relief Requested By Defendant

WHEREFORE, defendant respectfully requests the following relief:

A. That the Court dismiss plaintiff’s Complaint with prejudice and that the Court deny each prayer for relief sought by plaintiff.

B. That the Court adjudge that the asserted claims of the ’806 patent are invalid pursuant to 35 U.S.C. §§ 102, 103, and/or 112.

C. That the Court adjudge that the asserted claims of the ’806 patent have not been infringed by or for the United States.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN J. FARGO
Director

*s/Conrad J. DeWitte, Jr.*
CONRAD J. DEWITTE, JR.
Attorney
Intellectual Property Staff
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 514-7223
Facsimile: (202) 307-0345
E-mail: conrad.dewitte@usdoj.gov

Date: January 4, 2008