# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CHRISTOPHER SEAN VAN WINKLE and DAVID ALAN COX, | ) |
| Plaintiffs, | ) |
| | ) No. 07-652 C |
| v. | ) |
| | ) Judge Baskir |
| THE UNITED STATES OF AMERICA, | ) cc: ADR JUDGE HORN |
| Defendant. | ) |

## PLAINTIFFS' RESPONSE TO THIRD PARTY DEFENDANT POINT BLANK BODY ARMOR, INC.'S MOTION TO INTERVENE

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

Gary H. Nunes (Counsel of Record)
Holly Emrick Svetz (Of Counsel)
Womble Carlyle Sandridge & Rice, PLLC
8065 Leesburg Pike, Fourth Floor
Tysons Corner, Virginia 22182
Telephone: (703) 790-3310
Fax: (703) 790-2623

Jack B. Hicks (Of Counsel)
Womble Carlyle Sandridge &
Rice, PLLC
300 North Greene Street
Suite 1900
Greensboro, NC 27401
Telephone: (336) 574-8030
Fax: (336) 574-4520
***Counsel for Plaintiffs***

# TABLE OF CONTENTS


I. Background .......................................................................... 2

II. Argument and Discussion of Legal Authority .................................... 5

A. 41 USC 114(b) Confers No Right of Intervention upon Point Blank ........................................................................ 5

B. Intervention as of Right under Rule 24(a)(2) ............................ 9

1. Point Blank's Interest is Insufficient to Support its Motion for Intervention ........................................................ 10

a. Point Blank has no direct and immediate interest in this case............................................ 10

b. Point Blank has no legally protectable interest in this case ...................................................... 14

c. Point Blank's Ability to Protect its Interest............ 21

2. The Government Will Adequately Represent Point Blank's Interest................................................ 23

C. Permissive Intervention under Rule 24(b)(2)........................... 25

D. Judicial Economy Does Not Favor Allowing Point Blank's Proposed Intervention......................................................... 28

III. Conclusion......................................................................... 29

# TABLE OF AUTHORITIES

***Cases***

***American Maritime Transport, Inc. v. U.S.*, 870 F.2d 1559, 1561 (Fed. Cir. 1989)** ................................ 10, 12, 13

*Atlantic Mut. Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 961 (7th Cir. 1994) ................................................... 20

*Bird v. United States*, 51 Fed.Cl. 536 (2002) ........................................................................ 8

*Bowser, Inc. v. United States*, 420 F.2d 1057 (Ct. Cl. 1970) ............................................... 6, 8, 15

*Carrier Corp. v. United States*, 209 Ct. Cl. 267 (1976) ........................................................................ 6

*Earth Resources Corp. v. United States*, 44 Fed.Cl. 274 (1999) ...................................................................... 19

*Freeman v. U.S.*, 50 Fed.Cl. 305, 308-309 (2001) ................................................ 9, 23

*John R. Sand & Gravel Co. v. United States*, 59 Fed.Cl. 645 (2004) .................................. 8, 14, 19, 20, 21, 22, 29

*Northrop Grumman Info Tech., Inc. v. United States*, 74 Fed.Cl. 407 (2006) ...................................................................... 10

***Penda Corp. v. United States*, 44 F.3d 967 (Fed. Cir. 1994)** ............................................ 13, 16, 17

*Rockwell Int'l Corp. v. United States*, 31 Fed.Cl. 536 (1994) ................................................................ 6, 7

*Fifth Third Bank*, 52 Fed.Cl. 202 (2002) ...................................................................... 23

*Tri-Wall Containers, Inc. v. United States*,
187 F.2d 748 (Ct. Cl. 1969) ........................................................ 19

*Uram v. United States*,
216 Ct.Cl. 418 (1978) .................................................................... 7

**Zacharin v. United States,**
**No. 96-5076, slip op. (Fed. Cir. Feb. 14, 1997)**............................ 28

***Statutes***

28 U.S.C. § 1491 ............................................................................ 26

37 C.F.R. § 501.1, *et seq.* .................................................................. 28

41 U.S.C. § 114(b)...............................................................1, 5, 7

***Miscellaneous Authorities***

*Black's Law Dictionary* 1414 (7th Ed. 1999)........................................... 22

6 *James Wm. Moore et al., Moore's Federal Practice*
¶ 24.03[2][b] (3d ed. 1999)............................................................ 14

*Van Winkle and Cox v. Department of the Army*, Decision on
Appeal from Government Employee Rights Determination,
March 20, 2007............................................................................ 3, 28

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CHRISTOPHER SEAN VAN WINKLE and DAVID ALAN COX,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 07-652 C<br><br>Judge Baskir<br>cc: ADR JUDGE HORN |

## PLAINTIFFS' RESPONSE TO THIRD PARTY DEFENDANT POINT BLANK BODY ARMOR, INC.'S MOTION TO INTERVENE

Plaintiffs Christopher Sean Van Winkle and David Alan Cox (collectively "Plaintiffs") submit this brief in response to the Proposed Third Party Defendant's Motion to Intervene submitted by Point Blank Body Armor, Inc. (hereinafter "Point Blank"). In response to Point Blank's arguments that it should be permitted to intervene in this case, Plaintiffs contend that 41 U.S.C. 114(b) and Rule 14 confer no right of intervention upon Point Blank and this Court should deny Point Blank's request to intervene under the provisions of Rule 24.

## I. BACKGROUND

Plaintiffs are Captains in the U.S. Army who are currently serving on active duty. During 2003, Plaintiffs served as Physician Assistants assigned to provide medical support to the 82nd Airborne Division stationed in Iraq. While serving in Iraq, Plaintiffs invented a new kind of body armor that reduces injuries resulting from Improvised Explosive Devices, the leading cause of casualties to coalition forces in Iraq and Afghanistan. The Plaintiffs' work on their invention was performed on their own time and without use of government resources, and they named their invention "deltoid axillary protective device" or "DAP." and subsequently obtained a patent for their invention; namely, U.S. Patent No. 7,076,806 ("the '806 patent").

Plaintiffs disclosed the invention to their superiors, who were favorably impressed. The United States has already determined that the plaintiffs have exclusive rights to the DAP and that the Government does not possess any type of license thereto. Specifically, by a decision dated March 20, 2007, the United States determined as follows:

> "We therefore conclude that the invention [DAP] was not made during work hours or with a contribution by the Government of facilities, equipment, materials, funds or information, or time or services of other Government employees on official duty, and that the

> invention does not bear a direct relation to and was not made in consequence of the official duties of the inventors."

(Van Winkle and Cox v. Department of the Army, Decision on Appeal from Government Employee Rights Determination, March 20, 2007, p. 6-7) (attached hereto as Exhibit A) (hereinafter "Decision on Appeal").

On June 7, 2004, the United States issued contract no. W91CRB-04-D-0014 to Point Blank to provide Deltoid and Axillary Protectors ("DAPs") to United States Army personnel serving in Iraq and Afghanistan. (Proposed Third Party Defendant's Answer to the Complaint, filed January 25, 2008, ¶ 15 (Docket No. 19)) (hereinafter "Proposed Answer"). Point Blank contends that the contract makes reference to a prior General Services Administration contract that includes a patent indemnity provision. The provision states, in pertinent part, as follows:

> The Contractor shall indemnify the Government . . . against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent . . . arising out of the performance of the contract, provided the Contractor is reasonably notified of such claims and proceedings.

(Memorandum in Support of Proposed Third Party Defendant's Motion to Intervene, p. 7) (hereinafter "Intervention Memorandum").

On July 18, 2007, Plaintiffs sent a letter to Point Blank notifying Point Blank of the '806 patent and inviting Point Blank to enter discussions

regarding a potential license in the patent. (Letter of July 18, 2007 from Jack B. Hicks to Larry Ellis) (attached hereto as Exhibit B). Point Blank responded on August 3, 2007 by stating that Point Blank manufactures DAPs for the Government "according to specifications required and provided by the U.S. Army" and refusing Plaintiffs' invitation to discuss obtaining a license in the '806 patent. (Letter of August 3, 2007 from John Seimer, President, Point Blank Body Armor, Inc. to Jack B. Hicks) (attached hereto as Exhibit C). Consequently, at least as of August 2007, Point Blank had no interest in discussing Plaintiffs' patent nor any rights relating thereto. Instead, Point Blank, in effect, referred Plaintiffs to the United States Government.

In view of Point Blank's refusal to discuss rights to the DAP, Plaintiffs filed this suit against the United States alleging that the United States had engaged in the unlicensed use of the '806 patent. (Complaint, ¶ a, filed Sept. 6, 2007 (Docket No. 1)). In its Answer, the United States admits that authorization and consent exists for items delivered to and accepted by the U.S. Army (Answer at ¶ 23). Point Blank, some six months after it refused to discuss acquiring a license to make and use the DAP, now attempts to intervene as a third-party defendant, arguing that it has an interest in this proceeding. Point Blank seeks to assert both the Government's and its

own challenges that the United States should not be obligated to compensate plaintiffs for the United States' use of the DAP.

## II. Argument and Discussion of Legal Authority

### *A. 41 U.S.C. 114(b) Confers No Right of Intervention upon Point Blank*

In support of its motion to intervene, Point Blank first argues that it "has a right to appear and intervene as a third-party defendant under the authority of 41 U.S.C. §114(b)." (Intervention Memorandum, p. 7). Point Blank makes the claim that "the right conferred by 41 U.S.C. § 114(b) and Rule 14(b) would be extinguished if Point Blank was [sic] not able to participate in this litigation." (*Id.* p. 13). However, Point Blank's arguments are misplaced because neither 41 U.S.C. §114 nor Court of Federal Claims Rule 14[1] confers any right of intervention upon a non-party that has merely received notice of a suit pending before the Court of Federal Claims.

Point Blank relies upon several cases from the Court of Federal Claims and its predecessor court, the United States Court of Claims, in support of its claim that the receipt of notice pursuant to Section 114(b) and Rule 14(b) of the United States Court of Federal Claims confers a right of intervention upon the notified person. (Intervention Memorandum, p. 5-6

---

[1] "RCFC 14 implements the authority set forth in 41 U.S.C. §114." Rule 14, Rules Committee Note, 2002 Revision.

(citing *Bowser, Inc. v. United States*, 420 F.2d 1057 (Ct. Cl. 1970); *Rockwell Int'l Corp. v. United States*, 31 Fed.Cl. 536 (1994); and *Carrier Corp. v. United States*, 209 Ct. Cl. 267 (1976))). However, these cases do not support Point Blank's contention, as none of them actually address the propriety of allowing the notified person to intervene in the litigation. *See Bowser*, 420 F.2d at 1060 (ruling on a motion to quash a summons issued to a notified party; "[The notified party] moved to quash the summons and to dismiss the defendant's contingent claim. This motion is now before us for decision."); *see also Rockwell*, 31 Fed.Cl. at 537 (ruling on a motion to quash a notice issued under Section 114(b) and Rule 14). Both *Bowser* and *Rockwell* address only the implications of a notified or summoned party's *refusal* to appear or respond to notice issued under Rule 14. *See Bowser*, 420 F.2d at 1061; *see also Rockwell*, 31 Fed.Cl. at 539. On the other hand, the legal analysis in *Carrier* was limited to a determination of whether a potential indemnitor had an interest sufficient to require the issuance of notice. *Carrier*, 209 Ct. Cl. at 251. The court in *Carrier* did not consider whether the noticed party had sufficient interest to intervene, but rather explicitly stated that "we make this determination solely for the limited purpose of determining whether notice should issue under our Rule 41(a)(1)". Point Blank's misguided reliance upon these cases ignores the

well-established principle that a court's decision to issue notice to a potentially interested party is not equivalent to a decision that the notified party may be joined to the litigation as a party in interest. *See Rockwell*, 31 Fed.Cl*.* at 537 (citing *Uram v. United States*, 216 Ct. Cl. 418, 1978 WL 8423, *1 (1978)).

Section 114 outlines two alternative procedures available to the Court for addressing potential third parties. The Court "may ***summon*** any and all persons with legal capacity to be sued to appear as a party . . . to assert or defend their interests." 41 U.S.C. §114(b) (emphasis added). Alternatively, the Court, may "upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having possible interests therein, ***notify*** such persons to appear to assert and defend such interests." *Id.* (emphasis added). Neither Section 114(b) nor Rule 14(b) grants a notified person the right to intervene because the rule for notifying a potentially interested person "requires no jurisdictional evaluation prior to the issuance of notice, but merely requires that a person '*appear*' to have an interest." *Uram*, 1978 WL 8423, *1 (emphasis added). Courts have repeatedly held that notifying a potentially interested person "is not equivalent to a decision that the court has subject matter jurisdiction, may treat the noticed person as a party in interest, or could render a judgment

against that person." *Id.* (citing *Bowser v. United States*, 190 Ct. Cl. 441, 440 F.2d 1057 (1970)); *see also Bird v. United States*, 51 Fed.Cl. 536, 541 (2002). The provisions of Section 114(b) and Rule 14(b) do not govern intervention because "intervention is governed by Rule 24 of the Rules of the United States Court of Federal Claims (RCFC)." *John R. Sand & Gravel Co. v. United States*, 59 Fed.Cl. 645, 648 (2004).

In the instant case, the Court has not summoned Point Blank to join as a formal party, but rather has only exercised its limited power under Section 114(b) and Rule 14(b) to notify Point Blank of this lawsuit because it *appears* that Point Blank *may* have an interest. Notification is nothing more than an alert to a potentially interested person that they should investigate further whether they should seek intervention or joinder by some other means. Additionally, a notification issued under Rule 114(b) and Rule 14(b) has no bearing upon whether Point Blank's interest in this proceeding is sufficient to support a motion for intervention. Point Blank's motion to intervene in this case is governed solely by the procedures outlined in Rule 24 of the Court of Federal Claims. *See Sand*, 59 Fed.Cl. at 648.

### *B. Intervention as of Right under Rule 24(a)(2)*

Point Blank next argues that it should be allowed to intervene as of right under Rule 24(a) of the Rules of the Court of Federal Claims. Rule 24(a) requires that a party seeking intervention as of right must show that it has

> an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a). In *Freeman v. United States*, the Court of Federal Claims further clarified the elements a party seeking to intervene must satisfy by explaining that the intervenor must show that

> (1) they have an interest relating to the *property or transaction* that is the subject matter of the action; (2) without intervention the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (3) their interest is inadequately represented by the existing parties.

*Freeman v. U.S.*, 50 Fed.Cl. 305, 308-309 (2001). Point Blank has not satisfied the requirements of Rule 24(a) as interpreted by *Freeman*, and the motion to intervene should be denied.

**1. Point Blank's Interest is Insufficient to Support its Motion for Intervention**

As an initial matter, Point Blank states that it needs only claim an interest that may be impaired in order to trigger intervention as of right and that it needs only make well-plead allegations, which the court should accept as valid. (Intervention Memorandum, p. 9-10 (citing *Northrop Grumman Info Tech., Inc. v. United States*, 74 Fed.Cl. 407, 413 (2006))). Regardless of whether Point Blank's allegations are well plead or are accepted as valid, Point Blank must show that its interest is sufficient to support intervention as of right under Rule 24(a). Point Blank has failed to make such a showing.

**a. Point Blank has no direct and immediate interest in this case**

"Intervention is proper only to protect those interests which are 'of such a *direct* and *immediate* character that the inventor will either gain or lose by the *direct* legal operation and effect of the judgment.'" *American Maritime Transport, Inc. v. U.S.*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (emphasis in the original) (quoting *U.S. v. Amer. Tel. Tel. Co.*, 642 F.2d 1285, 1292 (C.A. D.C. 1980) (internal citations omitted)). The alleged interest "may not be either indirect or contingent." *Id.*

According to Point Blank, its interest in this case is of a direct and immediate character because Point Blank has entered into a contract with the United States to manufacture deltoid and axillary protectors for the U.S. Army and the contract includes a clause whereby Point Blank has agreed to indemnify the United States against an allegation or judgment of patent infringement. (Intervention Memorandum, p. 11). Point Blank explains that should Plaintiffs succeed in their suit against the United States for the unlicensed use of the '806 patent, and if the United States seeks to enforce the indemnification clause, Point Blank may be obligated to pay the judgment against the United States. *See id.* Upon the occurrence of these events, Point Blank argues that it "may lose by direct legal operation and effect of an adverse judgment in this case." *Id.*

Point Blank's argument regarding the indemnification clause is logically unfounded. First, the interest that Point Blank alleges it may lose is nothing more than an obligation under the contract that Point Blank knowingly and willfully entered into with the United States. Presumably, Point Blank agreed to the contract with the United States because it would receive some benefit in exchange for providing the United States with indemnification from a patent infringement. Point Blank's contractual obligation springs from the occurrence of a predetermined event, namely

an allegation or judgment of patent infringement against the United States, and Point Blank cannot now argue that a judgment against the United States, will cause Point Blank to "gain or lose by the direct legal operation and effect of the judgment." *Am. Mar.Trans., Inc.*, 870 F.2d at 1561. Instead, Point Blank will merely be required to perform its agreed-upon obligation if the United States seeks to enforce the indemnification clause. This is the risk they undertook when they agreed to their contract with the government.

Secondly, to the extent Point Blank has any interest in this litigation, Point Blank has already pointed out a chain of contingent, yet-unrealized events that must occur in order for Point Blank to be held liable under the indemnification clause: (1) Plaintiffs must receive some monetary award or settlement in its suit against the United States, (2) the United States must seek to enforce the indemnification clause against Point Blank to recover for any adverse judgment or monies paid and (3) the United States must succeed in enforcing the indemnification clause against Point Blank. (Intervention Memorandum, p. 11)

The Federal Circuit has repeatedly held that contingent interests are insufficient to satisfy the requirements of Rule 24(a). In *American Maritime Transport Inc. v. United States*, the Federal Circuit held that a party seeking

to intervene failed to meet the standard of Rule 24 because the alleged interest would be jeopardized “only if each and every one of a chain of other possible, but not certain, events were to take place.” 870 F.2d 1559, 1561 (Fed. Cir. 1989). Furthermore, the Federal Circuit explained that the would-be intervenor’s interest “[was] indirect because no consequence to [the proposed intervenor] flows immediately from the Claims Court ruling, and contingent because of the uncertainty that other events will actually follow, causing [the proposed intervenor] to suffer any harm.” *Id.* Thus, in *American Maritime Transport*, as in this case, the proposed intervenor’s interest was indirectly connected to the outcome of the case via a chain of intermediate and uncertain occurrences.

Similarly, in *Penda Corp. v. United States*, the Federal Circuit found that a third-party defendant who was potentially liable to indemnify the United States against a judgment of patent infringement had insufficient standing to appeal the adverse judgment. 44 F.3d 967 (Fed. Cir. 1994). The Federal Circuit characterized the third-party’s pecuniary interest arising from the potential liability as an indemnitor as “indirect and consequential, rather than direct and immediate.” *Id.* at 972. This characterization by the Federal Circuit regarding the interest of a similarly-situated third-party indemnitor in a patent infringement case against the United States is

applicable in the instant case as well. Point Blank's interest as a potential indemnitor is merely indirect and consequential, and, as a result, Point Blank's interest is insufficient to support intervention under Rule 24(a)(2).

**b. Point Blank has no legally protectable interest in this case**

In addition to the requirement that Point Blank's interest must be of a direct and immediate character, Point Blank's interest in this case must also be legally protectable. *See Sand*, 59 Fed.Cl. at 653 (citing *Am. Mar. Transp.*, 870 F.2d at 1561). A "legally protectable interest is one which the substantive law recognizes as belonging to or being owned by the applicant." *Id.* (internal citations omitted). One commentator has observed that "non-property rights usually are not sufficient to support intervention as of right." 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 24.03[2][b] (3d ed. 1999).[2]

---

[2] The text and cited cases in this portion of MOORE'S FEDERAL PRACTICE address Federal Rule of Civil Procedure 24. However, the preliminary notes to the Rules of the Court of Federal Claims state that "in the 2002 revision, the court has endeavored to create a set of rules that conforms to the Federal Rules of Civil procedure to the extent practicable given differences in jurisdiction between the United States district courts and the United States Court of Federal Claims." RCFC 2002 Rules Committee Note. Additionally, "the 2005 revision extends the symmetry between these rules and the Federal Rules of Civil Procedure." RCFC 2005 Rules Committee Note.

Point Blank argues that it has a significant interest in this case because "intervention may be Point Blank's only opportunity to litigate the validity of the '806 patent" (Intervention Memorandum, p. 11). As supporting authority, Point Blank cites *Bowser, Inc. v. United States* for the proposition that it may be precluded from challenging the validity of the '806 patent in a future action to enforce the indemnification clause in the contract with the United States. (Intervention Memorandum, p. 12). However, the principle issue in *Bowser* was whether the court had jurisdiction to hear a contingent cross claim asserted by the Government against a third-party indemnitor summoned under Rule 14. *See Bowser, Inc. v. United States* 420 F.2d 1057, 1060 (Ct. Cl. 1970). The Court of Claims found that it had no jurisdiction over the Government's cross-claim and granted the third-party's motion to quash the summons, and further held that "if the Government wishes to take action against the third party to enforce the indemnity clause, it has its remedy in the proper forum." *Id.* at 1063. Therefore, to the extent that the defenses of invalidity and non-infringement are relevant to a future litigation by Government to enforce the indemnification clause, Point Blank may raise those defenses in that suit.

Point Blank also ignores the notes to the 2002 Revision of Rule 14, where the Rules Committee specifically states that "the language of the old

rule with respect to … the consequences of failing to appear in response to [notice under Rule 14(b)] have been stricken." Rule 14 of the Court of Federal Claims, Rules Committee Note, 2002 Revision. Indeed, the Rules Committee recognized that the law regarding the effect of failing to appear after receiving a summons or notification under Rule 14 remains unsettled. *See id.*

Regardless of whether the law with respect to parties notified according to Rule 14 has become more settled in recent years, the more recent version of Rule 14 supersedes the *Bowser* court's interpretation of the preclusive effect upon parties who elect not to appear in litigation. Additionally, the holding in *Bowser* does not contemplate the issue of intervention under Rule 24(a), and, therefore, has no bearing upon the issue of whether Point Blank's interest is sufficient to support a motion to intervene.

Point Blank also argues that the holding in *Penda Corp. v. United States* indicates that Point Blank will not have independent standing to appeal any adverse judgment against the United States in this case. (Intervention Memorandum, pp. 12-13). This is true. According to Point Blank, it follows that its inability to appeal the judgment in this case will extinguish its right to assert the defenses of patent invalidity and non-

infringement. Point Blank's contention is incorrect. In *Penda*, the patentee brought suit against the Government under 28 U.S.C. § 1498(a). The Court granted the Government's motion to serve a third-party indemnitor, Cadillac, with notice pursuant to Court of Federal Claims Rule 14(a)(1). Cadillac joined as a third-party defendant. At trial, the lower court found the patent valid and that the Government used the invention without license and granted judgment in favor of the patentee. Cadillac and the Government filed their notices of appeal. The Government subsequently withdrew its appeal. Cadillac sought to pursue its appeal.

The issue was whether a third-party defendant in the Court of Federal Claims against whom no judgment has been or could be entered may appeal a judgment against the United States that the United States chose not to appeal. Cadillac claimed it had standing to independently appeal based on (1) its status as a third-party defendant at trial; (2) its financial interests in the outcome of the trial as the Government's indemnitor; or (3) its risk of being bound by the issues of law and fact decided by the Court of Claims. *See Penda*, 44 F.3d at 970 The Federal Circuit disagreed and dismissed the appeal.

The court held that (1) the judgment was not entered against Cadillac and the Court of Federal Claims is without jurisdiction to determine

Cadillac's contractual obligation to indemnify the Government; (2) Cadillac's potential liability as an indemnitor is indirect and consequential, rather than direct and immediate such that Cadillac is not aggrieved by the Court of Federal Claims judgment; and (3) the Court of Federal Claims judgment may not preclude Cadillac from raising the issue of patent invalidity in any subsequent district court action by the Government concerning Cadillac's liability under the indemnification agreement or by Penda alleging infringement by Cadillac. *Id.* at 972. The Federal Circuit explained the mechanics of this result, stating that the United States cannot assert issue preclusion against the notified party because they "were not adversarial parties before the Court of Federal Claims." *Id.* Thus, in Penda, the United States and the notified party "were allies, not adversaries, on all issues in suit before the Court of Federal Claims. The judgment of that Court thus cannot support an assertion of issue preclusion by the Government against [the notified party]." *Id.* In fact, the Federal Circuit went even further in stating that "relitigation of the issue in a subsequent action between the parties is not precluded [when] the party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action…." *Id.* (internal citations omitted). Thus, Point Blank's concern that a judgment against the

United States may preclude Point Blank's ability to raise the issues of invalidity and non-infringement, to the extent they are relevant, in future litigation with the Government is unfounded.

A recent case from the Court of Federal Claims indicates that concern about potential liability under a contractual obligation to indemnify the United States against an adverse judgment does not constitute a "legally protectable interest on the part of the intervenor-applicant to avoid its indemnification obligation to the United States." *John R. Sand & Gravel Co. v. United States*, 59 Fed.Cl. 645, 655 (2004).[3] In *Sand*, the Court of

[3] *Sand* provides a detailed analysis of two patent infringement cases where a third-party was allegedly allowed to intervene based on an indemnity obligation: *Tri-Wall Containers, Inc. v. United States*, 187 F.2d 748 (Ct. Cl. 1969) and *Earth Resources Corp. v. United States*, 44 Fed.Cl. 274 (1999). However, the court in *Sand* acknowledged that neither of these cases address the merits of whether the intervenor-applicant's had sufficient interest to intervene. *See Sand*, 59 Fed. Cl. at 654, n.8. *Tri-Wall* simply states that the "intervenor asserts invalidity," but there is no indication what-so-ever that the intervenor was an indemnitor of the United States. 187 F.2d at 749. Additionally, *Tri-Wall* provides no discussion of the specific grounds upon which the intervenor was allowed to join the litigation. *See id.* In *Earth Resources Corp.*, the intervenor-applicant "intervened because it agreed to indemnify the United States." 187 F.2d at 277. However, the intervenor-applicant was both the employer of one of the listed inventors of the patent and the assignor of a family of patent applications that eventually matured into the patents in question. In the litigation, the intervenor-applicant raised the issue of whether the assignee had property identified the inventive entity, and had challenged the validity of the patent based on inventorship, and the scope of the assignment documents. *Earth Resources Corp.* provides no further guidance as to why the intervenor-applicant was permitted to intervene, and based upon the complicated

Federal Claims held that the intervenor's contingent liability under an indemnification agreement was not "an interest relating to the property or transaction which is the subject matter of the action." *Id.* (citing Court of Federal Claims Rule 24(a)). In this case, as in *Sand*, Point Blank's asserted interest is based solely on its concern that it may potentially be liable to the United States. The holding in *Sand* indicates that such concerns are not an interest in the property or transaction that form the subject of this law suit and are insufficient to meet the requirements for intervention under Rule 24(a).

Additionally, it appears that Point Blank's only real concerns with the subject matter of this case are limited to the legal principles that form the basis of the defenses raised by the United States. However, in a case involving an application to intervene as of right under Federal Rule of Civil Procedure 24(a), the Seventh Circuit held that "persons who care about the legal principles that apply to a dispute may appear as *amici curiae;* they are not entitled to intervene." *Atlantic Mut. Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 961 (7th Cir. 1994). Point Blank's concern with regard to the legal principles involved in this case and the adequacy of the defenses

---

procedural history of the case and substantial questions of assignment, ownership, and inventorship, it can not be assumed that the intervenor-applicant was permitted to intervene solely based on an indemnification obligation.

raised by the United States is not a legally protectable interest in the outcome of this case, and, therefore, Point Blank's concerns are insufficient to allow intervention in this case.

### c. Point Blank's Ability to Protect its Interest

In general, a prospective intervenor asserting that its interest in a case is based upon a potential defense is "not likely to suffer impairment of its interests where it is free to assert its rights in a separate action. Moreover, the mere inconvenience caused by requiring the prospective intervenor to litigate the matter separately does not constitute the impairment required by Rule 24(a)." *Sand v. United States*, 59 F. Cl. at 655. As discussed above, the Federal Circuit's holding in *Penda* clearly indicates that a judgment adjudicating the Plaintiff's complaint against the United States will not preclude Point Blank from asserting the very legal defenses they argue will be compromised, to the extent they are relevant, if Point Blank's motion to intervene is not granted in this case.

Point Blank argues that "in subsequent litigation in district court, it would not be reasonable to believe that a district court would ignore the Federal Circuit's earlier findings in reaching its decision." (Intervention Memorandum, p. 14 (Docket No. 18)). Point Blank's argument again relies on the presupposed occurrence of a chain of contingent events: (1) the

United States will lose at trial, and (2) the United States will either elect not to appeal the decision in this case or the Federal Circuit will affirm the decision in this case on appeal. Regardless of the likelihood of these contingencies ever coming to fruition, Point Blank ignores the fact that if the Government chooses to assert the indemnification clause against Point Blank at some future, and yet unforeseeable time, Point Blank will not be estopped from raising whatever defense it desires to the extent those defenses are relevant. In the event that the United States files suit to enforce the indemnification clause in a district court against Point Blank, the district court may not be bound to follow this court's decision. *Sand*, 59 Fed.Cl. at 656. While it is true that the district court may consider the decision in this case, the outcome in this case "does not operate as stare decisis, which is '[t]he doctrine of precedent, under which it is *necessary* for a court to follow earlier judicial decisions when the same points arise again in litigation.'" *Id.* (quoting *Black's Law Dictionary* 1414 (7th Ed. 1999)) (emphasis in the original). Therefore, a disposition in the present case in no way impairs or impedes Point Blank's ability to protect its interest.

**2. The Government Will Adequately Represent Point Blank's Interest**

In order to succeed on its motion to intervene, Point blank must also show that the United States may inadequately represent Point Blank's interest. *See Fifth Third Bank*, 52 Fed.Cl. 202, 205 (2002). But "when applicants seek to intervene as a party on the side of the United States, the government is presumed to adequately represent the applicant's interest." *Freeman v. United States,* 50 Fed.Cl. 305, 310 (2001). Point Blank may rebut this presumption by showing the possible existence of collusion between the parties, adversity of interest, or nonfeasance. *See id.*

As its only support for the contention that the United States will not adequately represent its interest, Point Blank claims that the United States may choose not to appeal an adverse judgment. Point Blank further claims that because it would have no standing on its own to appeal the judgment, Point Blank would have no further recourse with respect to the judgment entered by the Court of Federal Claims fixing the United States' liability on the issue of infringement. (Intervention Memorandum, p. 16). Point Blank states its concern that the indemnification clause may discourage Defendant from appealing an adverse judgment, and as such, the United States will not adequately represent Point Blank's interest. (Intervention Memorandum, p. 16).

Point Blank's interest in this case includes raising the affirmative defenses of invalidity and non-infringement. In fact, the United States has already raised these affirmative defenses. (Defendant's Answer to Complaint, ¶¶ B – C, Docket No. 15) It is unreasonable to think that the Department of Justice attorneys assigned to represent the United States in this case will fail to vigorously defend the United States against Plaintiffs' infringement claim to the greatest extent possible. Furthermore, as discussed above, if the United States receives an adverse judgment in this case and either elects not to appeal or loses on appeal, such an outcome will have no adverse impact what-so-ever on Point Blank's ability to assert its own defenses, to the extent relevant, against a claim by the United States in a later suit. Therefore, the presumption that the United States will adequately represent Point Blank's interest in this case must stand.

Additionally, Point Blank has not sought to rebut the presumption that the United States will adequately represent Point Blank's interest by asserting nonfeasance or collusion. The United States is currently fully engaged and participating in this suit by responding to the complaint, raising its affirmative defenses to the claim of patent infringement, and complying with the Rules that govern the formal requirements imposed upon a party by the Rules of the Court of Federal Claims. The United

States' manifest intent to vigorously and thoroughly defend Plaintiff's claims provides a clear indication that the United States has no intention of engaging in nonfeasance or collusion.

### *C. Permissive Intervention under Rule 24(b)(2)*

As an alternative to its argument in favor of intervention as of right, Point Blank also argues that it is entitled to permissive intervention under Rule 24(b)(2). In order to succeed on its motion for permissive intervention, Point Blank must show that its "claim or defense and the main action have a question of law or fact in common." RCFC 24(b)(2). Point Blank first argues that it satisfies the requirement of Rule 24(b)(2) because "the defenses raised by Point Blank involve questions of law or fact similar to those raised by the United States." (Intervention Memorandum, p. 17) Point Blank's statement is accurate, in that its intent to raise the issues of validity and non-infringement are ***similar*** to the questions of law and fact in this case; however, while Point Blank's defenses possess similarity to the defenses of the United States, Point Blank's defenses lack commonality.

The main action in this case involves a claim against the United States for the unlicensed use of the '806 patent. (Complaint, ¶ a). Certainly, the United States and Point Blank share the same objective, namely to avoid a judgment that the United States has infringed the claims

of the '806 patent. However, sharing the same objective is not the same as sharing questions of law or fact. *See Sand*, 59 Fed.Cl. at 657. On the one hand, the Government desires to defend against Plaintiff's complaint, while on the other hand Point Blank seeks to avoid a future lawsuit filed by the United States in the district court to enforce the provisions of the agreed upon indemnification clause. However, Point Blank cannot contest their ultimate liability under the indemnification clause in this action because of the limited subject matter jurisdiction conferred upon this Court by Title 28 of the United States Code. This court's jurisdiction is limited to "render judgments upon any claim *against the United States* founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. Based upon the provisions of Section 1491, this Court's subject matter jurisdiction does not extend to any claim against Point Blank, whether filed by the Plaintiffs or by the United States, nor does this Court's jurisdiction extend to any defense that Point Blank may raise to such a claim. Any defense that Point Blank may raise on its own behalf involves a question that is outside of this Court's narrowly circumscribed jurisdiction

and, as such, would necessarily lack a question of law or fact in common with the claim of patent infringement against the United States.

Additionally, this Court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." RCFC 24(b)(2). Point Blank has stated that its participation in this case "will facilitate the discovery process and promote the efficient and just resolution of this dispute." (Intervention Memorandum, p. 17). Point Blank's participation will not necessarily facilitate discovery, for the United States will have access to a great deal of the information involving the contracts with and monies paid to Point Blank. Moreover, the Rules of the Court of Federal Claims regarding subpoenas and third-party depositions will provide both parties with sufficient access to any additional information deemed necessary.

Possibly more telling with regard to the role Point Blank seeks to play in this action are its assertions in its proposed Answer. Point Blank has indicated that it will argue that "the United States is entitled to a license or title to the '806 patent because the patent was invented on Government time using Government Resources." (Proposed Answer, ¶ 38). However, this issue already has been fully and finally resolved in favor of Plaintiffs by the decision of the Under Secretary of Commerce for Technology pursuant

to the Uniform Patent Policy for Rights in Inventions Made by Government Employees, 37 C.F.R. § 501.1, *et seq.* (Decision on Appeal, p. 6-7). The Under Secretary's decision is an affirmative determination of patent ownership rights and is a full and final decision as to whether the Government has ownership rights in the '806 patent. *See Zacharin v. United States*, No. 96-5076, slip op. at 6 (Fed. Cir. Feb. 14, 1997). Point Blank's attempt to raise this issue will "unduly delay or prejudice the adjudication of the rights of the original parties." RCFC 24(b)(2) Accordingly, this Court should refuse to exercise its discretionary powers to allow Point Blank to permissively intervene in this case.

***D. Judicial Economy Does Not Favor Allowing Point Blank's Proposed Intervention***

Point Blank's argument that judicial economy favors allowing permissive intervention in this case is merely a restatement of its similar argument in favor of intervention as of right under Rule 24(a)(2). In particular, Point Blank asserts the United States may seek to enforce the indemnity clause against Point Blank, thus requiring Point Blank "to raise many of the same issues of law and fact in the district court that would have already been decided in this court." (Intervention Memorandum, p. 18). But, this court has no subject matter jurisdiction to adjudicate the

potential claims by the United States against Point Blank, *see* 28 U.S.C. §1491, and intervention in this case will not prevent the district court from considering the defenses raised by Point Blank against the United States. *See Sand v. United States*, 59 Fed.Cl. 645, 656 (2004) (explaining that a decision by the Court of Federal Claims does not operate as *stare decisis* in a case before a district court). Furthermore, Point Blank has no right of appeal in this case, nor will Point Blank suffer from any potential issue preclusion in future litigation. As such, allowing Point Blank to intervene in this case will only serve to further delay and complicate this proceeding. Contrary to Point Blank's assertion, allowing Point Blank to intervene in this case will actually require the expenditure of additional time, effort, and resources to address the many issues that Point Blank may attempt to interject in this proceeding.

## III. Conclusion

For the above stated reasons, this Court should not allow Point Blank to intervene as a third-party defendant in this suit. Neither 28 U.S.C. §114(b) nor Rule 14(b) of the Court of Federal Claims provides Point Blank with any right of intervention, and Point Blank does not possess a sufficient interest in this case to be allowed to intervene as of right under Rule 24(a)(2). Additionally, the Court should not exercise its discretion under

Rule 24(b)(2) to allow Point Blank to permissively intervene. Plaintiffs respectfully request that this court deny Point Blank's motion to intervene.

Respectfully submitted this 11th day of February, 2008.

WOMBLE CARLYLE
SANDRIDGE & RICE, PLLC

By: /s/ Gary H. Nunes

Gary H. Nunes (Counsel of Record)
Holly Emrick Svetz (Of Counsel)
Womble Carlyle Sandridge & Rice, PLLC
8065 Leesburg Pike, Fourth Floor
Tysons Corner, Virginia 22182
Telephone: (703) 790-3310
Fax: (703) 790-2623

Jack B. Hicks (Of Counsel)
Womble Carlyle Sandridge & Rice, PLLC
300 North Greene Street
Suite 1900
Greensboro, NC 27401
Telephone: (336) 574-8030
Fax: (336) 574-4520
***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2008, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO THIRD PARTY DEFENDANT POINT BLANK BODY ARMOR, INC.'S MOTION TO INTERVENE** has been electronically filed with the Clerk of Court using the CM/EFC system, which automatically sent notification of such filing to the following attorneys of record:

**Conrad J. DeWitte, Jr.**
Intellectual Property Staff
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
(202) 514-7223 (phone)
(202) 307-0345 (facsimile)
conrad.dewitte@usdog.gov

***Counsel for the United States, Defendant***

**Thomas J. Madden (Counsel of Record)**
**James Y. Boland (Of Counsel)**
Venable LLP
575 7th Street, NW
Washington, D.C. 20004-1601
(202) 344-4803 (phone)
(202) 344-8300 (facsimile)

***Counsel for Point Blank Body Armor, Inc.,***
***Proposed Third Party Defendant***

WOMBLE CARLYLE
SANDRIDGE & RICE, PLLC

By: /s/ Gary H. Nunes
Gary H. Nunes (Counsel of Record)
Holly Emrick Svetz (Of Counsel)
Womble Carlyle Sandridge & Rice, PLLC
8065 Leesburg Pike, Fourth Floor
Tysons Corner, Virginia 22182
Telephone: (703) 790-3310
Fax: (703) 790-2623

Jack B. Hicks (Of Counsel)
Womble Carlyle Sandridge & Rice, PLLC
300 North Greene Street
Suite 1900
Greensboro, NC 27401
Telephone: (336) 574-8030
Fax: (336) 574-4520

***Counsel for Plaintiffs Christopher Sean Van Winkle and David Alan Cox***