**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CHRISTOPHER SEAN VAN WINKLE and DAVID ALAN COX, | |
| Plaintiffs, | No. 07-652C |
| v. | Judge Baskir |
| THE UNITED STATES, | cc: ADR Judge Horn |
| Defendant, | |
| and | |
| POINT BLANK BODY ARMOR, Inc., 2102 S.W. 2nd Street, Pompano Beach, Florida, 33069 | |
| Proposed Third Party Defendant. | |

**PROPOSED THIRD PARTY DEFENDANT'S**
**REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**

Thomas J. Madden (Counsel of Record)
James Y. Boland (Of Counsel)
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601
PH: (202) 344-4803
FX: (202) 344-8300

Counsel for Point Blank Body Armor, Inc.

Dated: February 19, 2008

# Table of Contents

I. Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Intervention Under 41 U.S.C. § 114(b). . . . . . . . . . . . . . . 2

1. Section 114(b) Provides a Distinct Authority for Point Blank to Intervene in this Litigation . . .. . . . . . . . . . . . . . . . . 2

2. Point Blank has Adequately Asserted an Interest in this Action . . . . . . . . . . . . . . . . . . . . . . . 4

B. Intervention Under RCFC 24 . . . . . . . . . . . . . . . . . . . . . 6

1. Point Blank's Interest is Sufficient to Intervene as of Right . . . . . . . . . . . . . . . . . . . . . . . 7

a. Point Blank's Interest is Direct and Immediate . . . . . . . . . . . . . . . . . . . . . . . . . . 7

b. Disposition of this Case will Impair and Impede Point Blank's Ability to Protect its Interest . . . . . . . . . . . . . . . . . . . . 12

c. Point Blank's Interest will not be Adequately Represented by the Existing Parties . . . . . . . . . . . . . . . . . . . . . . 15

2. Point Blank's Interest is Sufficient for Permissive Intervention . . . . . . . . . . . . . . . . . . . .17

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# Table of Authorities

## Cases

***Am. Mar. Transp. v. United States*,**
**870 F.2d 1559 (Fed. Cir. 1989)** . . . . . . . . . . . . . . . . 8, 9, 11, 12

***Bowser v. United States*,**
**420 F.2d 1057 (Ct. Cl. 1970**) . . . . . . . . . . . . . . . . . . . . . . . 4-6, 8

***Carrier Corp. v. United States*,**
**209 Ct. Cl. 267 (1976)** . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5, 8

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*,
386 U.S. 129 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fund For Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003)) . . . . . . . . . . . . . . . . . . . . . . . . 16

***Honeywell v. United States*,**
**71 Fed. Cl. 759 (2006)** . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14,16

*John R. Sand & Gravel Co. v. United States*,
59 Fed. Cl. 645 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

***Klamath Irrigation Dist. v. United States*,**
**64 Fed. Cl. 328 (2005)** . . . . . . . . . . . . . . . . . . . . . . . . .11, 14, 15

***Knogo Corp. v. United States*,**
**656 F.2d 655 (Ct. Cl. 1981)** . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Libby, McNeill, & Libby v. City Nat'l Bank*,
592 F.2d 504 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . .10

***Lemelson v. United States*,**
**8 Cl. Ct. 789 (1985)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Martin Co. v. United States*,
163 F.Supp. 376 (Ct. Cl. 1958) . . . . . . . . . . . . . . . . . . . . . . . . 6

***Northrop Grumman Info. Tech., Inc. v. United States*,**
**74 Fed. Cl. 407 (2006)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

***Oak Forrest, Inc. v. United States*,**
**26 Cl. Ct. 1397 (1992)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Penda Corp. v. United States*,
44 F.3d 967 (Fed. Cir. 1994), *cert denied sub. nom. Cadillac Prod., Inc. v. TriEnda Corp.,*
514 U.S. 1110 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 12-13

*Penda Corp. v. United States*,
29 Fed. Cl. 533 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9 n.1

*Richfield Oil Corp. v. United States*,
151 F.Supp. 333 (Ct. Cl. 1957) . . . . . . . . . . . . . . . . . . . . . . . . 3

***Rockwell Int'l Corp. v. United States*,**
**31 Fed. Cl. 536 (1994)** . . . . . . . .. . . . . . . . . . . . . . . . . . . . 4-6, 8

*Rolls-Royce Ltd., Derby, England v. United States*,
364 F.2d 415 (Ct. Cl. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

***Trbovich v. United Mine Workers of Am.*,**
**404 U.S. 528 (1972)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Statutes**

41 U.S.C. § 114(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-5, 8, 20

**Rules**

RCFC 14(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 5

RCFC 14(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

RCFC 24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8, 11-15, 20

RCFC 24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 17, 20

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CHRISTOPHER SEAN VAN WINKLE and DAVID ALAN COX, Plaintiffs, | |
| v. | No. 07-652C |
| THE UNITED STATES, Defendant, | Judge Baskir<br>cc: ADR Judge Horn |
| and | |
| POINT BLANK BODY ARMOR, Inc., 2102 S.W. 2nd Street, Pompano Beach, Florida, 33069<br>Proposed Third Party Defendant. | |

**PROPOSED THIRD PARTY DEFENDANT'S**
**REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**

## I. Overview

Point Blank Body Armor, Inc. ("Point Blank") seeks to intervene in the above-captioned case pursuant to two distinct authorities. First, Point Blank seeks intervention under the Contract Settlement Act of 1944, 41 U.S.C. § 114(b) ("Section 114(b)"), and its implementing rule, Rule 14(b) of the Rules of the Court of Federal Claims ("RCFC"). Second, Point Blank

seeks, to the extent it is necessary, intervention as of right under RCFC 24(a) or permissive intervention under RCFC 24(b).

Point Blank's appearance and motion for intervention is timely. As directed by the court's notice, which was served on Point Blank on December 26, 2007 and not opposed by plaintiffs, Point Blank appeared and asserted its interest in the case on January 25, 2008, well within the 42 days prescribed in the notice and RCFC 14(b).

## II. Discussion

### A. Intervention Under 41 U.S.C. § 114(b).

#### 1. Section 114(b) Provides a Distinct Authority for Point Blank to Intervene in this Litigation.

Plaintiffs argue that Section 114(b) does not confer a right of intervention on Point Blank because a notice issued under the statute is "nothing more than an alert to a potentially interested person that they should investigate further whether they should seek intervention or joinder by some other means." Plaintiffs' Response ("Pl.'s Resp.") at 8. Plaintiffs' argument, however, disregards the fact that Section 114(b) provides a method for intervention which is separate and distinct from traditional intervention under RCFC 24.

Although notice issued under Section 114(b) and RCFC 14(b) signals to a party that it may voluntarily seek intervention, the statute and rule do

not require a noticed party to utilize the procedures of RCFC 24 to effectuate such intervention because the statute itself provides the basis for intervention. Indeed, one of the purposes of Section 114(b) is to allow third-party indemnitors to join an action to protect their interest. *See, e.g., Lemelson v. United States*, 8 Cl. Ct. 789, 790 (1985) ("In examining the scope of 41 U.S.C. § 114, the Court of Claims has noted that a third-party indemnitor has a limited right to participate in a suit to protect its interests."); *Richfield Oil Corp. v. United States*, 151 F.Supp. 333, 335 (Ct. Cl. 1957) (Section 114(b) was "intended to permit the United States to bring in parties who were under a duty to save it harmless from judgments such as the one sought by the plaintiff . . .").

A party effectuates intervention by filing an answer to the complaint in which the party establishes its interest in the action. *See* RCFC 14(c) ("such person may file an answer or a complaint setting forth the person's interest"); *see also Oak Forrest, Inc. v. United States*, 26 Cl. Ct. 1397, 1399 (1992) ("the noticed entity remains a nonparty *until* it appears voluntarily before the court and asserts its rights in some party capacity.") (emphasis added). Thus, under Section 114(b), a properly notified party need only appear and assert a sufficient interest in the case in order to intervene. The only question under Section 114(b) is whether Point Blank appeared

and adequately asserted its interest in this case. If so, Point Blank should be allowed to participate and traditional intervention under RCFC 24 would be unnecessary.

2. Point Blank has Adequately Asserted an Interest in this Action.

As discussed in Point Blank's Memorandum in Support of its Motion to Intervene ("memorandum" or "Mem."), a third party, which may be obligated to indemnify the United States for patent infringement, has a sufficient interest under Section 114(b) to participate in a patent infringement suit against the government. *See Bowser v. United States*, 420 F.2d 1057 (Ct. Cl. 1970); *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 536 (1994); and *Carrier Corp. v. United States*, 209 Ct. Cl. 267 (1976). Plaintiffs argue that these three principal cases cited by Point Blank do not support this contention because "none of them actually address the propriety of allowing the notified person to intervene in the litigation." Pl.'s Resp. at 6.

While Point Blank agrees that these three cases do not address the merits of a motion to intervene *under RCFC 24*, they emphatically demonstrate that a non-party with a patent indemnity provision in its contract with the United States has a sufficient interest *under Section 114(b)* to participate in a patent infringement suit against the government

that would, if liability was found, trigger the contractual indemnification obligation.

In *Carrier*, the court explained that where the non-party's contract did not even contain an express patent indemnity clause, a "person against whom the United States alleges a nonfrivolous claim for indemnity is a party who 'appears' to have such an interest." *Carrier*, 209 Ct. Cl. at 251. While the precise ruling in *Carrier* was that the non-party *appeared* to have an interest (rather than *actually* having an interest), the difference is immaterial to this motion. RCFC 14(b) requires that a non-party only "appear" to have an interest for notice to issue. Once notice is issued, however, the interest that a party "appears" to have is verified as an actual interest when the party files a motion in the case which asserts and establishes that interest.

Similarly, in ruling on whether a summons or notice under Section 114(b) was proper, the *Bowser* and *Rockwell* decisions demonstrate what type of interest satisfies the language of the statute. In *Bowser*, for example, the court explained that it "cannot be doubted that [the non-party] has . . . a 'possible' interest [because] it has a direct pecuniary interest in the outcome" and, therefore, "has a *right* to participate in order to protect its interests." *Bowser*, 420 F.2d at 1060 (emphasis added); s*ee also*

*Rockwell*, 31 Fed. Cl. at 537. These decisions are consistent with other cases in which the United States is sued for patent infringement under a government contract and the contractor, which has an obligation to indemnify the government, is allowed to intervene on the basis of its indemnification obligations. *See, e.g., Knogo Corp. v. United States*, 656 F.2d 655 (Ct. Cl. 1981) (supplier of antitheft detection systems was noticed about the pending patent infringement suit against the government and entered the case as a third-party defendant).

Point Blank established its interest in this case by appearing on January 25, 2007, answering the complaint, asserting its interest, and providing the court with the relevant portions of Contract No. W91CRB-04-D-0014, the subject of plaintiffs' complaint, and Contract No. GS-07F-8942D, which includes the patent indemnity clause. *See* Exhibit 1 (Declaration of John Siemer and attachments). Because plaintiffs in this action allege patent infringement arising under the performance of these contracts, Point Blank has a verified interest and, therefore, should be permitted to participate in this case.

**B. Intervention Under RCFC 24**

Point Blank meets the requirements for both intervention as of right under RCFC 24(a)(2) and permissive intervention under RCFC 24(b)(2).

1. Point Blank's Interest is Sufficient to Intervene as of Right.

In their response, plaintiffs incorrectly argue that Point Blank's interest does not satisfy the three basic requirements under RCFC 24(a)(2) to intervene as of right. *See* Pl.'s Resp. at 10.

*a. Point Blank's Interest is Direct and Immediate*.

As Point Blank explained in its memorandum, its interest in order to intervene under RCFC 24(a) must be one that is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) ("*American Maritime*"), (internal citation omitted) (emphasis in original). Point Blank's interest is virtually identical to that of the applicant in *Honeywell v. United States*, 71 Fed. Cl. 759 (2006), where the court held that the applicant's "indemnification obligation and position as a potential defendant in a separate proceeding . . . *more than satisfies* a direct and immediate interest." *Id.* at 765 (emphasis added). *Cf. Bowser, Rockwell,* and *Carrier* (where possible indemnity obligations were a sufficient interest for intervention under Section 114(b)).

Point Blank's interest is direct and immediate because, among other things, its indemnity clause provides that it is liable for the costs of "alleged"

infringement, which means that Point Blank is obligated to indemnify the government for its costs in defending this lawsuit—costs that the government is presently incurring. Mem., Ex. B at 3 of 16. At the very least, then, Point Blank's interest is not contingent on the outcome of this litigation because Point Blank has a direct and immediate interest in mitigating the costs of the government's defense.

Plaintiffs contend, however, that Point Blank does not have a direct and immediate interest in this action because Point Blank "knowingly and willfully" agreed to the patent indemnity clause in its contract, suggesting that the only consequence of this action is that Point Blank will "merely be required to perform its agreed-upon obligation if the United States seeks to enforce the indemnification clause." Pl.'s Resp. at 11-12. Plaintiffs' assertion, however, is an admission that Point Blank's contractual obligation to indemnify the United States for actual or alleged infringement is of a direct and immediate character because it acknowledges, in effect, that Point Blank "will either gain or lose by the direct legal operation and effect of the judgment in this case." *Am. Mar. Transp.*, 870 F.2d at 1561.

Plaintiffs also assert that Point Blank's interest is indirect and contingent on a chain of uncertain events. Plaintiffs' argument, and their reliance on *American Maritime*, is inapposite. In that case, the non-party's

interest was indirect and contingent because the party's "interest" was that it might face increased competition if the plaintiff was successful in the action. The non-party did not have any contractual or legal obligations that would be triggered by an adverse judgment in the case. Conversely, Point Blank has a contract clause with the government that is directly and immediately affected by this action. A contract is a legally binding agreement and the legal obligations contained therein are not contingent upon a party seeking to enforce them. The government's potential decision not to enforce the indemnity clause would not change the fact that the clause immediately establishes a legal obligation that would be triggered by this litigation.

Plaintiffs also mischaracterize the holding in *Penda Corp. v. United States*, 44 F.3d 967 (Fed. Cir. 1994). *See* Pl.'s Resp. at 13-14. In that decision, the Federal Circuit was deciding whether a patent indemnitor had "sufficient interest to demonstrate standing to appeal," not whether the indemnitor had sufficient interest to intervene under RCFC 24.[1] *Penda*, 44 F.3d at 971. Although the court characterized the third-party indemnitor's pecuniary interest as "indirect and consequential," the court did so in the

[1] In fact, the indemnitor in this case, Cadillac Products, did participate in the litigation as a third-party defendant—precisely what Point Blank is seeking to do here. *See Penda Corp. v. United States*, 29 Fed. Cl. 533 (1993).

context of *standing to appeal* where the general rule cited by the court is that a "party may only appeal to protect its own interests, and not those of a coparty." *Id.* (quoting *Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 511 (9th Cir. 1978)). The third-party in *Penda* did not have independent standing to appeal because it was not "aggrieved" by the judgment—indeed, only the United States was aggrieved by the judgment because the government is the only defendant against whom the Court of Federal Claims can enter judgment. Thus, by appealing the judgment entered only against the United States, the third-party was, in effect, seeking to "champion the rights," *Libby*, 592 F.2d at 512, of the United States when the government elected not to appeal. Such an attempt to appeal on behalf of the government is insufficient for standing to appeal.

In this case, however, Point Blank seeks to protect its own interest and not that of the government. Moreover, because Point Blank has a direct and immediate obligation to indemnify the government for costs of alleged infringement, Point Blank's interest is not contingent upon a chain of uncertain events.

Further, plaintiffs erroneously contend that Point Blank's interest is not legally protectable because there will be no preclusive effect on Point Blank's ability to argue non-validity and non-infringement in subsequent

litigation. *See* Pl.'s Resp. at 15. A legally protectable interest under RCFC 24(a) is one that the "law recognizes as belonging to or being owned by the applicant" and thus requires "something more than an economic interest," such as the prospect of encountering increased competition. *Am. Mar. Transp.*, 870 F.2d at 1562. However, this interest can include "economic interests threatened by a ruling" such as a party's interest in the "solvency of a corporation to be formed pursuant to a consent decree." *Klamath Irrigation Dist. v. United States*, 64 Fed. Cl. 328, 330 (2005) (discussing *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967). In its memorandum, Point Blank explained that the existence of the contractual indemnity clause means that Point Blank may lose by the direct legal operation and effect of an adverse judgment in this case. *See* Mem. at 11. A contractual obligation to indemnify the government is a direct and concrete interest belonging to Point Blank, and is not the type of theoretical economic interest described in *American Maritime*.

Furthermore, plaintiffs' reliance on *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645 (2004) is misplaced. *See* Pl.'s Resp. at 19. In *Sand*, the court specifically distinguished its facts from "patent infringement cases where the intervenor had agreed to indemnify the defendant," calling such cases "inapposite" and "readily distinguishable

from this case." *Sand*, 59 Fed. Cl. at 653-54. Accordingly, the decision should have no bearing on Point Blank's motion.

Finally, whether Point Blank can raise the defenses of patent invalidity and non-infringement in future litigation has no bearing on whether the interest is one that is "legally protectable." Courts require an interest under RCFC 24(a) to be legally protectable in order to avoid intervention by such parties as the one in *American Maritime*, where the party's only interest in joining that litigation was to avoid increased competition. Because one's competitive position in the market is not legally protectable, it would have been improper to allow the applicant to intervene in that case. Here, Point Blank's interest is avoiding and mitigating liability under its contractual indemnification clause. Contractual liability is inherently a legally protectable interest, and is, therefore, an interest sufficient to satisfy RCFC 24(a).

*b*. *Disposition of this Case will Impair and Impede Point Blank's Ability to Protect its Interest.*

Plaintiffs argue that Point Blank need not intervene to protect its interests because Point Blank "will not be estopped from raising whatever defense it desires" in future litigation over the enforceability of the patent indemnity clause. Pl.'s Resp. at 22. The principal support for plaintiffs argument is the reasoning in *Penda*, where the Federal Circuit held that a

judgment in the Court of Federal Claims against the United States "cannot support the assertion of issue preclusion against Cadillac by . . . the Government." *Penda*, 44 F.3d at 972.

Regardless of the present state of the law with respect to issue preclusion, disposition of this case will *practically* impair and impede Point Blank's ability to protect its interest. Point Blank has a substantial interest in establishing non-validity and non-infringement—indeed, its indemnity obligation for actual infringement would not be triggered if such defenses are successful. However, in a separate action by the government to recover the amount of liability found against the government by this court, it is possible that the district court would determine that it would not have to look beyond the plain and ordinary meaning of the clause: "[t]he Contractor shall indemnify the Government and its officers, employees and agents against liability, *including costs*, for *actual or alleged* direct or contributory infringement . . ." Mem., Ex. B at 3 of 16 (emphasis added).

Even if a district court was willing to consider the defenses of patent invalidity or non-infringement that were litigated in this case, it would have no authority to reverse a judgment from this court, which may find the government liable for patent infringement. Thus, Point Blank would be deprived of an important means of protecting its interest under the

indemnity clause by asserting non-validity and non-infringement. At the very least, the court's determination in this case of the validity and infringement issues would have a persuasive effect on subsequent litigation. *See Honeywell*, 71 Fed. Cl. at 765 ("[s]ince a determination of infringement of '914 patent would have a persuasive, if not collateral effect, on future litigation in which infringement of the '914 patent is at issue, [the applicant] has established that this requirement of RCFC 24(a) is also satisfied"). The decision in *Klamath* aptly summarizes the issue:

> [T]his court simply cannot ignore the practical reality that, whether formally under *stare decisis* or not, a succeeding court, even if not bound by precedent, will—and should—be impacted by a prior opinion dealing with the same issues and subject matter . . . Where, as here, the potential of additional litigation involving the same resources looms large, a putative intervenor should be allowed to prevent the development of adverse precedents that undoubtedly will be wielded against it in the future.

*Klamath*, 64 Fed. Cl. at 335-36 (internal citation omitted). Because the threshold under RCFC 24(a) is merely that disposition of the matter "*may*, as a *practical* matter, impair or impede the applicant's ability to protect its interest," RCFC 24(a)(1) (emphasis added), the deference owed to this court's judgment by a district court would be sufficient practically to impair Point Blank's ability to protect its interest.

### *c. Point Blank's Interest will not be Adequately Represented by the Existing Parties.*

Intervention of right is proper because Point Blank's interest in the case will not be adequately represented by the United States. However, plaintiffs contend that the government is presumed to adequately represent Point Blank's interest, and only a showing of collusion between the parties, adversity of interest, or nonfeasance can overcome that presumption. *See* Pl.'s Resp. at 23.

In contrast to the standard asserted by plaintiffs, however, the Supreme Court has explained that the adequacy of representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972). Many decisions in the Court of Federal Claims similarly apply a "minimal" standard for the applicant. In fact, the court in *Northrop Grumman Info. Tech., Inc. v. United States*, 74 Fed. Cl. 407 (2006) restated the standard, suggesting that "another way of phrasing the burden requirements of the third prong of Rule 24(a)(2) is that the party opposing intervention must make a substantial showing of the adequacy representation." *Northrop*, 74 Fed. Cl. at 417. There, the court observed that the Court of Federal Claims is split on the issue of which party bears the burden of showing adequacy

of representation and noted that the Federal Circuit has not decided the issue. *See Id.* at 417 n.13. Regardless of the which party bears the burden, the "Supreme Court had made it clear 'that the standard for measuring inadequacy is low.'" *Id.* (quoting *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)).

The government will not adequately represent Point Blank's interest because the interests of an indemnitor are inherently different from an indemnitee. The fact that Point Blank has raised the same defenses as the United States does not lessen Point Blank's unique interest in the litigation. In *Rolls-Royce Ltd., Derby, England v. United States*, 364 F.2d 415 (Ct. Cl. 1966), for example, the indemnitor was granted permission to intervene even though, "[i]n their respective answers, the Government and [indemnitor] each set up the defenses of invalidity, non-infringement, and an alleged license from plaintiff to [indemnitor]." *Id.* at 417. *Rolls-Royce* is an implicit recognition that in patent infringement cases, defendants may have different opinions as to whether certain defenses as to patent validity may be raised. See, for example, *Honeywell*, 71 Fed. Cl. at 766, where the court found inadequacy of representation in part because the government might not raise all of the potential defenses to patent infringement.

More importantly, as an indemnitee, the government may very well be less motivated to appeal an adverse ruling. If this court issues an adverse judgment and the government does not appeal it, Point Blank would have no standing to appeal, whether as a third-party defendant or non-party. Therefore, in that case, Point Blank's only opportunity to represent its interests on the issues of validity and infringement is through participation at the trial court level.

2. Point Blank's Interest is Sufficient for Permissive Intervention.

Point Blank is also entitled to participate in this case under the lesser standard for permissive intervention, which requires that Point Blank's "defense and the main action have a question of law or fact in common." RCFC 24(b)(2). Under this rule, the court must consider whether intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

With respect to common issues of law, plaintiffs contend that Point Blank's legal issues in its defense lacks commonality with the government's defense. *See* Pl.'s Resp. at 25. In order to make this argument, plaintiffs characterize Point Blank's intention for intervening as merely seeking "to avoid a future lawsuit," whereas the government's desire is to defend the allegations in the complaint. *Id.* at 26. Point Blank is not asking the court

to consider the enforceability of the indemnity clause. The purpose of intervention is to avoid liability for actual infringement and mitigate costs for alleged infringement. The primary way to accomplish that is to establish non-validity and non-infringement in this case. Point Blank's answer reflects that its defenses share the same issues of law as the government's defenses (i.e., whether the '806 patent is valid and whether it was infringed by the performance of Contract No. W91CRB-04-D-0014) and also have a common question of law with the main action, which seeks a judgment of infringement.

With respect to common issues of fact, plaintiffs did not identify a single fact in Point Blank's defense that differs from those in the government's defense or the main action. This is not surprising because the facts relating to the main action and the government's defense (i.e., the Army's procurement of deltoid and axillary protectors from Point Blank) are identical for Point Blank's defense.

Plaintiffs also argue that Point Blank's intervention will unduly delay and prejudice its rights to adjudicate its rights based on two grounds. First, plaintiffs argue that Point Blank's participation "will not necessarily facilitate discovery." *Id.* at 27. Plaintiffs' speculative argument is unconvincing. Point Blank sought intervention in this case approximately thirty days after

receiving notice of the lawsuit (to which plaintiffs made no objection), and only twenty days after the government filed its answer. As of this filing, the court has not ordered a formal discovery schedule. The first substantive ADR conference will not take place until March 2008 and Point Blank will not seek to delay settlement discussions. In short, the existing parties have neither begun formal discovery (other than initial disclosures) nor settlement negotiations such that Point Blank's intervention might unduly delay or prejudice plaintiffs' adjudication of this matter. As plaintiffs' only concern seems to be the speculative impact on discovery, discovery will actually be facilitated by Point Blank's intervention because plaintiffs will not have to use third-party discovery procedures under RCFC 45, which can be a time consuming and complex process.

The second ground for delay or prejudice suggested by plaintiffs is that Point Blank intends to litigate matters that have already been "fully and finally" determined in favor of plaintiffs. Pl.'s Resp. at 27. To the extent plaintiffs are correct in their assertion that administrative determinations have been "fully and finally" determined in their favor, Point Blank will not pursue those allegations in this case, including its allegation that the "United States is entitled to a license or title to the '806 patent because the patent was invented on government time using government resources."

Point Blank's Answer at ¶ 39. However, a non-frivolous defense and allegation raised in Point Blank's answer is not enough to constitute *undue delay* or *prejudice*.

## III. **Conclusion**

For the above stated reasons, Point Blank respectfully asks that the court grant its motion to intervene as a third-party defendant to assist the government in its defense of this suit in accordance with the authority of Section 114(b), RCFC 14(b), or, alternatively, RCFC 24(a) or RCFC 24(b).

Dated: February 19, 2008

Respectfully Submitted,

s/Thomas J. Madden
Thomas J. Madden (Counsel of Record)
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601
PH: (202) 344-4803
FX: (202) 344-8300

Counsel for Point Blank Body Armor, Inc.

Of Counsel:

James Y. Boland
Venable LLP
575 7th Street, NW
Washington, DC 20004-1601
PH: (202) 344-8273
FX: (202) 344-8300

DC1/265746