# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHRISTOPHER SEAN VAN WINKLE and DAVID ALLEN COX, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Judge Baskir |
| v. | ) | |
| | ) | No. 07-652C |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF PROPOSED THIRD PARTY DEFENDANT'S MOTION TO INTERVENE

# Table of Contents


I. STATEMENT OF FACTS ..................................................... 1

II. DISCUSSION ................................................................ 3

A. Point Blank By Right Can Intervene Under 41 U.S.C. § 114(b) ................................................................ 3

1. Intervention Serves the Purpose of 41 U.S.C. § 114(b) ....... 3

2. Intervention By Point Blank Promotes Judicial Economy ..... 6

3. Intervention By Point Blank Avoids Inconsistent Judgments Against the Government ................................................... 7

B. Point Blank Has the Right to Intervene Under RCFC 24(a)(2) ................................................................ 8

1. Point Blank Has an Interest Relating To the Potential Infringement of the DAPs It Provided To the Government ... 8

2. Disposition of the Action May Practically Impair or Impede Point Blank's Ability to Protect It's Interest ........................ 14

3. Point Blank's Interest Is Not Adequately Represented By the United States ................................................................ 17

C. Point Blank Should Be Permitted to Intervene Under RCFC 24(b)(2) ................................................................ 18

1. Point Blank's Defenses and the Government's Defenses Contain Common Questions of Law and Fact ................... 18

2. Point Blank's Intervention Will Not Delay or Prejudice the Adjudication of the Rights of Plaintiffs or the Government . 18

III. CONCLUSION ................................................................ 20

# Table of Authorities

**Federal Cases**

Am. Maritime Trans., Inc. v. United States, 870 F.2d 1559 (Fed. Cir. 1989) ... 8

Belton Indus., Inc. v. United States, 6 F.3d 756 (Fed. Cir. 1993) ... 3

Bowser, Inc. v. United States, 420 F.2d 1057 (Ct. Cl. 1970) ... 5

Gasquet v. Johnson, 1 La. 425 (1830) ... 12, 13

Horn v. Volcano Water Co., 13 Cal. 62 (1859) ... 11, 12, 13

Maryland Cas. Co. v. United States, 141 F. Supp. 900 (Ct. Cl. 1956) ... 5

Penda Corp. v. United States, 44 F.3d 967 (Fed. Cir. 1994) ... 7, 14, 15

Rockwell Int'l Corp. v. United States, 31 Fed. Cl. 536 (1994) ... 5

Smith v. Gale, 144 U.S. 509 (1892) ... 11, 12, 13

United States v. Am. Tel. & Tel., 642 F.2d 1292 (D.D.C. 1980) ... 11, 12, 13

Wolfchild v. United States, 72 Fed. Cl. 511 (2006) ... 5

**Federal Statutes**

41 U.S.C. § 114(b) ... passim

**Federal Rules**

FRCP 24(a) ... 12

RCC 24(a) ... 12

RCFC 14(b) ... 3

RCFC 24 ... 4

RCFC 24(a) ... 3, 11

RCFC 24(a)(2) ... 8, 14

RCFC 24(b) ........................................................................................ 3

RCFC 24(b)(2)................................................................................... 18

**Other Authorities**

Contract Number GS-07F-8942D............................................. 1, 8, 10

Contract Number W91CRB-04-D-0014 .................................... 1, 6, 18

U.S. Patent Number 7,076,806 .............................................. 1, 2, 6, 9

Van Winkle, et al. v. Dept. of the Army, Decision on Appeal from Government Employee Rights Determination, March 20, 2007...... 2

The United States submits this reply supporting Point Blank Body Armor, Inc.'s (Point Blank) Motion to Intervene. As a practical matter, if Point Blank is not allowed to intervene at this stage in this litigation, Point Blank may never have an opportunity to defend itself against liability for infringement of U.S. Patent Number 7,076,806 (the '806 patent). In addition, if Point Blank is not allowed to intervene, the government could be subject to potentially inconsistent judgments regarding infringement of the '806 patent and indemnity by Point Blank of any judgment based upon a finding of infringement.

## I. STATEMENT OF FACTS

Plaintiffs are Captains in the U.S. Army who served as physician assistants while stationed in Iraq in 2003. During their tour of duty in Iraq, plaintiffs developed a protector to supplement the Outer Tactical Vest used by U.S. Army soldiers. This supplemental protector provides auxiliary ballistic protection to the deltoid (upper shoulder) and axillary (underarm) regions of a soldier wearing an U.S. Army issued Outer Tactical Vest. Through Contract Number W91CRB-04-D-0014 (the '0014 contract), which referred to GSA Contract Number GS-07F-8942D (the '8942D contract), the U.S. Army contracted with Point Blank to supply Deltoid and Axillary

Protectors (DAPs) to U.S. Army soldiers. In the present action, plaintiffs allege that these DAPs infringe the ’806 patent.

Captain Van Winkle has represented through counsel that on or about January 31, 2004 he disclosed what he termed a Deltoid and Axillary Protection Device to the U.S. Army in an Invention Disclosure Form (DA Form 4734-R) and in an Invention Rights Questionnaire (DA Form 2871-R). By August 12, 2004, plaintiffs had submitted to the U.S. Army an updated Invention Rights Questionnaire (DA Form 2871-R) disclosing the Deltoid Axillary Protective Device which listed both Captain Van Winkle and Captain Cox as inventors. After a determination of invention rights was provided by the U.S. Army and was subsequently appealed by plaintiffs to the U.S. Department of Commerce, plaintiffs received a favorable decision from the Undersecretary for Technology of U.S. Department of Commerce. (See Van Winkle, et al. v. Dept. of the Army, Decision on Appeal from Government Employee Rights Determination, March 20, 2007 (Exhibit A to Pl.’s Resp.).) During the pendency of these appeals, the ’806 patent issued to Captain Van Winkle and Captain Cox.

Plaintiffs filed the present action on September 6, 2007. Pursuant to 41 U.S.C. § 114(b), Point Blank was served with Notice

of the Complaint on December 26, 2007. Point Blank timely filed its Motion to Intervene on January 25, 2008. See Belton Indus., Inc. v. United States, 6 F.3d 756, 762 (Fed. Cir. 1993).

## II. DISCUSSION

### A. Point Blank By Right Can Intervene Under 41 U.S.C. § 114(b)

In its memorandum in support of its motion, Point Blank asserts that it can intervene under 41 U.S.C. § 114(b) (as implemented by Rule 14(b) of the Rules of the Court of Federal Claims (RCFC)), RCFC 24(a), or RCFC 24(b). The government agrees with Point Blank's assertion.

#### 1. *Intervention Serves the Purpose of 41 U.S.C. § 114(b)*

In relevant part, 41 U.S.C. § 114(b) states:

> The United States Court of Federal Claims may, upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having possible interests therein, notify such persons to appear to assert and defend such interests. Upon failure to so appear, any and all claims or interests or interests in claims of any such person against the United States, in respect of the subject matter of such suit or proceeding, shall forever be barred and the court shall have jurisdiction to enter judgment pro confesso upon any claim or contingent claim asserted on behalf of the United States against any person who, having been duly served with summons, fails to respond thereto, to the same extent and with like effect as if such person had appeared

> and had admitted the truth of all allegations made on behalf of the United States.

41 U.S.C. § 114(b).

Section 114(b) states that the Court may notify a person having a possible interest in a proceeding to appear to assert and defend its interests. Thus, the language of section 114(b) treats the notification of Point Blank as an invitation to file an answer as a matter of right.

Plaintiffs suggest that section 114(b) merely creates a means for notice of a suit, and that a noticed party may only intervene under RCFC 24. This reading of section 114(b) creates the undesirable situation where a party is notified of an action to which it has a possible interest, but cannot intervene because it does not satisfy any of the criteria of RCFC 24.[1] Plaintiffs' interpretation of section 114(b) merely would notify Point Blank of the suit, but would not provide Point Blank with a mechanism to appear in spite of the implicit admission in the notice to Point Blank that it has possible interests in the proceeding to defend. Thus, plaintiffs' interpretation would provide an illusory opportunity for a third-party intervenor to protect its interests in this litigation.

---

[1] Moreover, under the interpretation of Rule 24 proffered by plaintiffs, it is doubtful any indemnitor could intervene, effectively nullifying the notice portion of section 114(b).

In addition, intervention by Point Blank would be consistent with the purpose of section 114(b) as elucidated by the legislative history of section 114(b) that this Court has reviewed in previous cases. As this Court has observed:

> The history of the Act indicated that Subsection 114(b) was created to promote judicial economy by avoiding repetitive litigation of the same issues, as well as to protect the government from potentially inconsistent judgments. Based on this determination, the Court of Claims found that the government could move to have a third party brought into the case and that the court had authority to grant such a request. Subsequent decisions reaffirmed this position.

Wolfchild v. United States, 72 Fed. Cl. 511, 534 (2006) (citing Maryland Cas. Co. v. United States, 141 F. Supp. 900, 902-04 (Ct. Cl. 1956)); see Bowser, Inc. v. United States, 420 F.2d 1057, 1060 (Ct. Cl. 1970) (observing that 41 U.S.C. § 114(b) included an implicit congressional intent that the issues of law and fact not be retried in another court after being tried in the Court of Claims); Rockwell Int'l Corp. v. United States, 31 Fed. Cl. 536, 539 (1994) (citing Bowser).[2]

[2] While Wolfchild, itself, concerned the issuance of a summons, rather than notice, this passage reflects the Congressional intent underlying notice, as well.

The presence of Point Blank as a third party defendant would serve both to avoid repetitive litigation of issues, as well as to protect the government from potentially inconsistent judgments.

### 2. *Intervention By Point Blank Promotes Judicial Economy*

As a third party defendant, Point Blank will be able to assert its contentions regarding the validity of the ’806 patent and alleged infringement of the DAPs that it provided under the ’0014 contract at the same time that the government is presenting its arguments on these same issues. By allowing Point Blank to present its arguments in this proceeding, judicial resources will be conserved because the Court only once will have to invest the time necessary to understand the ’806 patent and the often technical and nuanced issues that are typical in patent infringement litigation. Under plaintiff’s view, in any case involving an indemnitor whose products were at issue in a section 1498 action, the indemnitor would be unable to so participate and might then raise the same issues in a contract action to enforce its obligation to indemnify, potentially requiring the Court to reconsider these patent issues.

### 3. *Intervention By Point Blank Avoids Inconsistent Judgments Against the Government*

Point Blank's presence as a third party defendant will prevent a scenario wherein the United States is found to infringe the '806 patent, but then is unable to be indemnified by Point Blank because of a conflicting finding of non-infringement of the '806 patent in some later proceeding. This is a scenario that the plaintiffs suggested in their brief. Pl. Reply at 15 (arguing Point Blank may present patent invalidity contentions in a later action with the government), 18 (arguing that the government would not be able to assert issue preclusion against Point Blank in a later action against indemnification action against Point Blank). While, under Penda Corp. v. United States, 44 F.3d 967, 972 (Fed. Cir. 1994), Point Blank may be entitled to attempt to re-argue whether the government should have been held liable, as a practical matter, its participation in making the same arguments would make it far less likely to succeed in such an assertion.

Thus, allowing Point Blank to intervene in this action will serve the purpose of 41 U.S.C. § 114(b) by conserving judicial resources and helping the United States avoid inconsistent judgments.

### B. Point Blank Has the Right to Intervene Under RCFC 24(a)(2)

The government agrees that Point Blank has a right to intervene under RCFC 24(a)(2), apart from section 114(b). In order for someone to intervene as a matter of right, RCFC 24(a)(2) requires the following:

> [1] when the applicant claims an interest relating to the property or transaction which is the subject of the action and [2] the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, [3] unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a)(2) (numerals added). These requirements are to be construed in favor of intervention. Am. Maritime Trans., Inc. v. United States, 870 F.2d 1559, 1561 (Fed. Cir. 1989). Point Blank meets the requirements for intervention as a matter of right as set forth in RCFC 24(a)(2).

#### 1. *Point Blank Has an Interest Relating To the Potential Infringement of the DAPs It Provided To the Government*

The patent indemnity clause found in the ’8942D contract states:

> [Point Blank] shall indemnify the Government . . . against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent . . . arising out of the

> performance of this contract provided [Point Blank] is reasonably notified of such claims and proceedings.

(Point Blank's Mem. Ex. A, Attach. B at ECF page 20 of 25.)

At least by virtue of the patent indemnity clause found in the '8942D contract, Point Blank is obligated to indemnify the United States if the Court holds that the '806 patent is infringed by the DAPs that Point Blank has provided to the government under the '0014 contract. As a practical matter, plaintiffs' argument based on the assertion that the government might not seek indemnification from Point Blank is ill-conceived. Government officials, who are presumed to act in good faith, are obligated to protect the government's interest. The government will enforce against Point Blank the patent indemnity clause of the '8942D contract. Thus, by operation of this patent indemnity clause, Point Blank will be liable to indemnify the government as soon as a judgment for infringement of the '806 patent is entered. Therefore, Point Blank does have a real financial interest relating to the finding that government's use of the DAPs provided by Point Blank infringe the '806 patent.

Likewise, the plaintiffs' argument that Point Blank had somehow already been paid for the possibility of having to indemnify the government for a judgment of patent infringement is betrayed by the

requirements of the patent indemnity clause included in the ’8942D contract. The patent indemnity clause of the ’8942D contract states:

> (h) Patent indemnity. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(’8942D contract, Modification Number MO02 (provided as Exhibit B to Point Blank’s Motion to Intervene, ECF document 18-3 at 17 of 24).)

For the indemnification provision to have effect, the patent indemnity clause requires that Point Blank be “reasonably notified” of the claims and proceedings that would lead to an indemnification. If, as plaintiffs suggest, the patent indemnity clause contemplated that Point Blank were to have no ability to defend against any claims or proceedings, notice to Point Blank would not be necessary or included in the patent indemnity provision. Instead the notice requirement indicates that under the patent indemnity clause, Point Blank has agreed to assume the risk that the government would be found to infringe a patent after a litigation in which both Point Blank and the government had the opportunity to participate to in the

defense against infringement to the fullest extent under the law. With this notice of this proceeding, Point Blank has the opportunity to work to protect its interests by, for example, as here, attempting to enter this case as a third party defendant. Thus, at the conclusion of this proceeding, if the government is found to infringe the ’806 patent, Point Blank will be required to indemnify the government.

In interpreting this section of RCFC 24(a)(2), both Point Blank and plaintiffs cite American Maritime Transport, Inc. v. United States, 870 F.2d 1559 (Fed. Cir. 1989), for the proposition that “[i]ntervention is proper only to protect those interests which are ‘of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.’” Id. at 1561 (quoting United States v. Am. Tel. & Tel., 642 F.2d 1292 (D.D.C. 1980) (quoting Smith v. Gale, 144 U.S. 509, 518 (1892) (quoting Horn v. Volcano Water Co., 13 Cal. 62 (1859))). However, a review of the cases from which this test has evolved indicates that it was born out of disputes involving property rights, and interpreted an intervention provision of the Louisiana Civil Code and similar provisions in force in California and the Dakota Territory that are different from RCFC 24(a).

The genesis of the phrase cited in American Maritime is Gasquet v. Johnson, 1 La. 425 (1830). In Gasquet, the third party requesting intervention had seized property of the defendant on which it had an attachment that was secondary to an attachment held by the plaintiff, Gasquet. According to the court, under the Civil Code of Louisiana, it was improper to allow the third party to intervene in order to sabotage Gasquet's action so that the property seized by the third party could be used to satisfy the defendant's debt to the third party. Id.

As in Gasquet, the courts in Horn, and Smith were deciding whether a party with some interest in property could intervene under a statute similar to that found in the Civil Code of Louisiana. The court in AT&T removed the test applied in Gasquet, Horn, and Smith from the context of property rights by applying it to allow a third party to intervene under Rule 24(a) of the Federal Rules of Civil Procedure so that the third party could assert its work product privilege in otherwise discoverable documents. See AT&T, 642 F.2d at 1292.

Similarly, in American Maritime the Court was interpreting Rule 24(a) of the Rules of the U.S. Claims Court, not a statute similar to

the intervention statute found in the Civil Code of Louisiana.[3] Am. Maritime at 1560 n.3 (Rule 24(a) of the U.S. Claims Court appears to have been the same as present RCFC 24(a)). Furthermore, the third party's interest was not an interest in property, but rather a fear of potential future subsidized competition arising from litigation between a competitor and the United States. Id. at 1561.

Thus, because RCFC 24(a) is not similar to Louisiana's Code of Practice discussed in Gasquet, or California's intervention provision discussed in Horn, or the Dakota Territory's intervention provision discussed in Smith, this Court should not apply the cited American Maritime test. Furthermore, because the application of Rule 24(a) in AT&T did not involve property rights, this Court should not apply the cited American Maritime test.

[3] According to the court in Gasquet, Article 390 of Louisiana's Code of Practice stated: "In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit." Gasquet. Similarly, according to the court in Horn, California's provision stated "any person shall be entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both." Horn, 13 Cal. at 63. Section 90 of the Dakota Code of Civil Procedure similarly stated: "Any person may, before trial, intervene, in any action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both . . .." Smith at 517.

Even if this Court were to apply this test, however, Point Blank should still be able to intervene under RCFC 24(a)(2). The certain effect of the patent indemnity clause found in the ’8942D contract stands in contrast to circumstance found in American Maritime. According to American Maritime, the third party’s “fear of future subsidized competition” was contingent on something as uncontrollable as the policies of the Israeli government. Am. Maritime, 870 F.2d at 1561. In contrast, Point Blank’s interest is direct and immediate in character because under the patent indemnity clause of the ’8942D contract Point Blank is required to indemnify the government if the DAPs it provided to the government are found to infringe the ’806 patent. Thus, Point Blank “will either gain or lose by the direct legal operation and effect of the judgment.” See id.

**2. *Disposition of the Action May Practically Impair or Impede Point Blank’s Ability to Protect It’s Interest***

As seen in Penda Corp. v. United States, 44 F.3d 967 (Fed. Cir. 1994), even if Point Blank is allowed to intervene, it will not have the ability to appeal judgments of this Court to the Federal Circuit independently of the government. Id. at 973. While the Federal

Circuit panel in Penda observed that Point Blank would be able to raise the issue of patent invalidity in a subsequent district court action as a formal matter, practically speaking, a decision from this Court finding a patent valid and infringed might have some actual effect on the ability of Point Blank to credibly argue to a district court that this Court's ruling was incorrect.

In addition, the Federal Circuit panel in Penda does not address the ability of Point Blank to raise in a later district court action arguments as to whether the '806 patent was in fact infringed. See id. at 972. Clearly, it would be beneficial for Point Blank to be able to present invalidity or non-infringement arguments before this Court to persuade the Court to find either that the '806 patent is invalid or not infringed.

Because Point Blank's presence as a third party defendant could avoid any relitigation of infringement and validity in a future enforcement action by the government against Point Blank in district court, preventing Point Blank from being able to offer helpful arguments regarding invalidity or non-infringement of the '806 patent will impair judicial economy as well as, practically speaking, impede

Point Blank's ability to protect its interests in avoiding indemnifying the government for infringement of the '806 patent.

The practicality of intervention of Point Blank is born out in the legislative history of 41 U.S.C. § 114(b) as discussed above. In particular, judicial economy would be served by allowing Point Blank to intervene in this litigation. As discussed above, by allowing Point Blank to present its arguments in this proceeding, judicial resources will be conserved because the Court only once will have to invest the time necessary to understand the '806 patent and the often technical and nuanced issues that are typical in patent infringement litigation.

The expense of monitoring this litigation in addition to presenting invalidity or non-infringement arguments in a later court action may also practically impair Point Blank's ability to protect its interests. Preventing Point Blank from participating in the present litigation does not relieve Point Blank from remaining informed about this litigation. The added expense of attorneys fees associated with remaining aware of the present litigation as well as attorneys fees in any subsequent actions involving the patent indemnity provision related to crafting invalidity and non-infringement arguments around the arguments presented in this case could, as a practical matter,

impede Point Blank's ability to protect its interests. Thus, there are real cost savings to be had by Point Blank by being an intervenor this litigation rather than forcing Point Blank in a subsequent litigation to re-argue or rehash arguments made in this litigation.

### 3. *Point Blank's Interest Is Not Adequately Represented By the United States*

As observed by Point Blank in its Reply, the government is interested in minimizing its liability for any finding of infringement of the '806 patent. Certainly, a finding of non-infringement or invalidity of the '806 patent would be the most direct successful outcome, from the government's perspective, because a finding of infringement would simply mean further potential litigation with Point Blank to enforce the patent indemnification clause of the '8942D contract. Point Blank's interest in this litigation begins and ends with proving either invalidity of the '806 patent or non-infringement of the '806 patent. Thus, while common interests are shared, Point Blank's interests and the government's interests are not perfectly aligned, and because the government will be able to collect from Point Blank under the patent indemnification clause of the '8942D contract, Point Blank has more to lose in this litigation than does the government.

## C. Point Blank Should Be Permitted to Intervene Under RCFC 24(b)(2)

The government agrees with Point Blank that the Court should permit Point Blank to intervene in this action as is allowed under RCFC 24(b)(2).

### 1. *Point Blank's Defenses and the Government's Defenses Contain Common Questions of Law and Fact*

As discussed above, both the government and Point Blank have a shared interest in proving either invalidity of the '806 patent or non-infringement of the '806 patent by the DAPs provided to the government by Point Blank under the '0014 contract. Potentially, Point Blank might present additional invalidity or non-infringement arguments, however, the subject matter of Point Blank's defenses to infringement and the government's defenses to infringement will contain the common question of "whether the '806 patent is valid," and "whether the '806 patent is infringed."

### 2. *Point Blank's Intervention Will Not Delay or Prejudice the Adjudication of the Rights of Plaintiffs or the Government*

Point Blank's intervention will not unduly delay or prejudice the adjudication of the rights of the plaintiffs or the government. Point Blank's motion comes before discovery has commenced and it has

not sought any additional time to accommodate its participation. From the government's perspective, Point Blank's intervention would encourage the swift resolution to these proceedings because it would be helpful for any settlement discussions and because Point Blank would be subject to the broader discovery obligations of a party. In addition, Point Blank's intervention would allow Point Blank to make all its arguments regarding invalidity and non-infringement of the '806 patent in this proceeding, which should allow any future proceedings involving indemnification under the patent indemnity clause of the '8942D contract proceed more swiftly than if Point Blank had to attempt to present its arguments for the first time in an enforcement action.

Furthermore, Point Blank's intervention will not unduly delay or prejudice the adjudication of the rights of the plaintiffs because Point Blank's interests in this case are identical to those of the government: a finding of invalidity of the '806 patent and/or a finding of non-infringement of the '806 patent. Thus, if allowed to intervene, Point Blank will be addressing issues with the plaintiffs that the plaintiffs will already be addressing with the government. Because Point Blank will be addressing with the plaintiffs the same issues as the government,

Point Blank's intervention would not unduly delay or prejudice the adjudication of the rights of the plaintiffs.

## III. CONCLUSION

Point Blank has the right to intervene in this litigation pursuant to 41 U.S.C. § 114(b) and RCFC 24(a)(2). In the alternative, the Court has discretion to permit Point Blank to intervene in this litigation under RCFC 24(b)(2).

Respectfully submitted,

February 25, 2008

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOHN J. FARGO
Director

s/ Conrad J. DeWitte, Jr.
CONRAD J. DEWITTE, JR.
Trial Attorney
Intellectual Property Staff
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530
Telephone: (202) 307-0459
Fax: (202) 307-0345

Counsel for Defendant